PETER LECLAIR *v.* MONTPELIER AND WELLS RIVER RAILROAD.

May Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 23, 1919.

*Negligence—Personal Injuries—Expert Medical Testimony—*
*Sufficiency of Objection Below—Evidence—Admissibility—*
*Connecting Injury with Accident—Motion to Strike Out*
*Evidence After Arguments—Witnesses—Cross-examination*
*—Harmless Error—Misstatement of Counsel—Correction*
*by Instruction—Motion to Modify Judgment—Federal Con-*
*trol—Execution Against Property.*

In an action for personal injuries, expert medical testimony is not
necessarily required to warrant a finding by the jury that a par-
ticular present trouble is the result of the accident.

In such case, where the defendant's motion to strike out evidence of
certain troubles of the plaintiff, on the ground that the troubles
had not been connected with the accident, was denied, it was not
necessary for the defendant, to have the benefit of its exception,
to point out specifically wherein the evidence came short of show-
ing the necessary connection; this not being required by the court.

In such case, evidence that previous to the accident the plaintiff was
a strong, vigorous, healthy man and had had no sickness nor
ailments, that at the time of the accident he was pinned down
by timber, iron, and other materials in his shop, and thereafter
suffered pain in his legs, back, and abdomen which continued
to the time of the trial, that the pelvic bone was displaced, and
the muscles of his back were tender and very much contracted,
was sufficient to connect the pain and soreness in his back with
the accident, apart from a physician's testimony referring the
trouble to a blow, and an exception to his testimony was without
merit.

A motion to strike out evidence made after the arguments were
closed was too late.

In an action for personal injuries, where much of the evidence relat-
ing to the injuries came in without objection, a motion to strike

out all of the evidence relating to certain specified troubles could not properly have been sustained, if seasonably made.

In such case, evidence showing the absence of any bowel trouble before the accident and its existence immediately thereafter, coupled with the circumstances of the injury, which afforded the only explanation therefor, was sufficient to justify the jury in inferring the necessary connection between such trouble and the accident.

In such case, where, on cross-examination of the superintendent of the hospital where plaintiff was taken, it developed that the nurses attending a patient were required to keep a chart showing a record of the patient from the time he entered the hospital to the time he went out, and the chart of plaintiff's case was produced on request of defendant's counsel, the question if the rules required the chart to contain the treatment given the patient by the nurses was properly excluded for the reasons that it was not proper cross-examination, and because the ground had already been fully covered by testimony received without objection.

In such case, an inaccurate statement by plaintiff's counsel, in argument, as to the distance plaintiff was carried by defendant's car when it wrecked his shop, was not reversible error, his actual position before and after the accident not being in dispute, and the injuries complained of having so little, if any, relation to the distance he was carried that it was not probable that the defendant was prejudiced by the overstatement.

In such case, an erroneous statement by plaintiff's counsel, in argument, that the doctors who took the plaintiff to the hospital were "paid specialists of the defendant", was not prejudicial, the court having correctly instructed the jury as to the use to be made of the evidence in weighing the testimony of the doctors.

The prohibition in Act of Congress of March 21, 1918, that no process, mesne or final, shall be levied against any property of transportation systems while under Federal control, is effective without a court order modifying a judgment to prevent the issue of an execution.

ACTION OF TORT to recover for personal injuries. Plea, the general issue. Trial by jury at the September Term, 1917, Washington County, *Slack*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*H. C. Shurtleff* and *W. B. C. Stickney* for the defendant.

*Richard A. Hoar, Alland G. Fay* and *J. Ward Carver* for the plaintiff.

TAYLOR, J.   This is a tort action for personal injuries occasioned by the negligence of the defendant.   The trial was by jury, with verdict and judgment for the plaintiff.   The case is here on defendant's exceptions.

The defendant conceded liability, and the only questions litigated related to the damages.   In an opening statement to the jury plaintiff's counsel detailed the circumstances of the accident, and the defendant conceded that it took place substantially in the manner stated.   We glean therefrom some of the facts necessary to a proper understanding of the questions to be reviewed.   The plaintiff is a blacksmith, and at the time of his injury was at work in his shop situated near the main line of railroad in the city of Barre operated by the defendant. Adjoining the plaintiff's shop at the south was a grain and flour mill, located on a spur track which terminated near the south side of plaintiff's shop.   At the time in question defendant's servants were engaged in doing shifting in that vicinity, and had just placed a car loaded with grain on the mill track. For some reason not now material the switch connecting the spur with the main line was not thrown after the engine returned from placing the car.   It went southerly some distance, and coupled onto quite a heavy train of cars that had previously been left on the main line, and then started down through the yard, gaining momentum as the train proceeded.   The train took the open switch at the spur, struck the car recently left there, and shunted it off the open end of the spur with sufficient force to carry it entirely through plaintiff's shop, tearing up by the roots and carrying along with it a tree about a foot in diameter, and practically demolishing the shop.   Fortunately the plaintiff was not in the direct line of the course taken by the car.   He was at that instant at work on the running gear of a heavy lumber wagon, resting on some sawhorses near the center of the shop.   He was carried forward to a point near the north side of the shop, and buried under the rubbish to a depth of several feet.   He was so entangled in the wreckage that a jack had to be used to raise the materials that pinned him down.

Plaintiff claimed to have been injured about his legs, back, head, and neck, so that from the time of the accident he had been unable to do any work, and that his injuries were of a permanent nature which would probably prevent him from ever resuming work at his trade.    On the other hand, the defendant claimed, and its evidence tended to show, that plaintiff's injuries were mainly confined to cuts and bruises on his legs, that they were not of a serious character, and that he should have been able to perform his usual work in from four to six weeks from the time of the accident.    The jury assessed the damages at $5,046.08.

Of the twelve exceptions that are briefed all but three involve the question whether connection between the accident and the particular injury complained of had been shown, and are so related that the length of this opinion can be abridged by considering them together.    The accident occurred on April 28, 1917, and the trial was begun on October 30th following.

Dr. Tyndall, a physician practicing his profession in Montpelier, testified that early in the summer after the accident the plaintiff came to his office, where he took some X-ray pictures of his knees and made a further physical examination.    Witness was then asked what he found, and, subject to the objection that there was no connecting evidence, was permitted to testify under exception that he found a very sensitive and tender spot over the lumbar region of the spine, of which the plaintiff made much complaint, and which might have been the result of a blow.

Dr. Boucher, another physician located in Montpelier, testified without objection in substance that he visited the plaintiff professionally at his home in Barre several times in August and September, 1917; that on those occasions he examined the plaintiff, and found that he had some trouble with his intestines, some pain in that region, which he thought was caused by adhesions; that he also found that he had some trouble with "the iliac joint of the sacrum, toward the left side," which he thought was due to a sprain, a strain; that he measured plaintiff's legs and found that the left was half an inch longer than the right; that plaintiff complained of pain in his back over the sacro-iliac joint and in the abdomen; that there was persistent soreness in his back; that he treated the plaintiff for the adhesions, applied adhesive plaster to give the back complete rest, and prescribed a liniment; and that with the condition of the plaintiff's back

as he found it, it was his opinion that he would not be able to work at his trade. Witness was then asked whether from his examination of the trouble which he had described (referring to the trouble with his back) plaintiff would at any time thereafter be able to resume his occupation of shoeing horses. It was objected that whether that was admissible or not depended upon whether the injury was connected with the accident. Plaintiff's counsel replied that they expected to make the connection, and under exception the witness was permitted to answer that he was in doubt if plaintiff would be able to do so, because of the condition of his back.

After the arguments were closed, and when the court was about to charge the jury, the defendant moved to strike out the evidence: (1) Regarding adhesions; (2) relating to bowel trouble; (3) regarding the lengthening of plaintiff's leg, on the ground that the several troubles referred to had not been connected with the accident, and excepted to the action of the court in overruling the motions.

The defendant excepted to the failure of the court to charge: (1) That there was no evidence tending to show any connection between the accident and the adhesions in the intestines testified to; (2) to the action of the court in leaving that question to the jury; (3) to the failure of the court to charge that there was no evidence tending to show a connection between the accident and any bowel trouble which plaintiff claimed to have had, as shown by the evidence; and (4) to the failure of the court to charge that there was no evidence tending to show a connection between the accident and any lengthening of plaintiff's leg.

Concerning all of these exceptions the defendant's claim is that nothing but expert medical testimony would serve to connect the several troubles with the accident, that such testimony is entirely lacking, and that therefore it was error to permit the jury to consider such troubles in arriving at plaintiff's damages. *Ryder* v. *Vermont Last Block Co.*, 91 Vt. 158, 99 Atl. 733, is relied upon in support of this proposition. But the question in that case was wholly unlike the questions presented here. There the question was as to the probable progress and duration of the plaintiff's troubles where the evidence disclosed no more than a serious injury resulting from a blow on the head. It was held to be error to argue and to permit the jury, unaided by expert medical testimony, to conclude that the accident had de-

stroyed the earning capacity of the plaintiff for the remainder of his life. Speaking of the injury, we said that it was not visible, but was obscure, was something about which, in respect to its continuance and impairment of ability in the long future, a layman could form no well-grounded opinion, could do no more than indulge in the merest speculation, and that expert medical testimony could alone lay a foundation for the claim made by counsel and submitted to the jury. Here the question is whether there was any evidence that would warrant the jury in finding that a present condition shown by the evidence to exist was the result of the accident. To establish the basis of such an inference it would not necessarily require the testimony of medical witnesses that the particular trouble was attributable to the accident. However, the causal connection might in some cases be so obscure as to require such testimony to remove the inference from the realm of speculation.

Plaintiff interposes the objection that defendant's counsel did not raise the question below that they argue here. It is true that they did not point out specifically wherein the evidence came short of showing the necessary connection; but this the court did not require them to do, and they were not called upon to make the objection more specific to have the benefit of their exceptions.

It will be necessary at this point to notice the testimony on which plaintiff relies as showing the connection. His evidence tended to show the following facts: He was 57 years old at the time of the trial. Before the accident, to use the language of witnesses, he was a strong, vigorous, healthy man, very rugged, and had previously had no sickness or ailments. Ever since his marriage, a period of 35 years, he had never had any sickness nor "any shiftless days." He had had no trouble with his back or legs prior to this accident. His health had been perfectly good and he had been able to and did work steadily. This accident happened. He was so pinned down by the timbers, iron, and other materials in the shop that it required nearly half an hour's time and a good deal of effort to extricate him from the wreckage. He was apparently unconscious for a time, said he first realized when they began to "let loose on me." When he regained consciousness he suffered a good deal of pain in his legs, back, and abdomen. Referring to his "bowels" he testified that something, he didn't know what, was pressing upon him there.

The doctor who examined him soon after at the hospital found a contusion over the abdomen where "something had struck the tissues." He continued to have pain in the bowels, small of the back, and legs down to the time of the trial. His bowels bloated, and he passed what he described as blood and pus on an occasion while Dr. Boucher was attending him. Dr. Martin, an osteopath, examined and treated him three times between June 12 and July 2, 1917. He found the muscles of the lower portion of the back tender and very much contracted. He made measurements, and found the left leg a half inch longer than the right. As accounting for this condition, he testified that he found one of the pelvic bones in an abnormal position, due to the stretching of the muscles or ligaments holding the bone in position, and that this condition might have been caused by an injury.

There was evidence for the jury to connect the pain and soreness in the back with the accident, apart from the testimony of Dr. Tyndall referring the trouble to a blow, and the exception to his testimony on the subject is without merit. . Nor was the exception to the admission of Dr. Boucher's opinion well taken for the same reason.

It is enough to say of the defendant's motion to strike out evidence, made after the arguments were closed, that it came too late to avail. Such a practice would result in intolerable confusion. Besides, much of the evidence had come in without objection, and the motion to strike out all of the evidence relating to the specified troubles could not properly have been sustained, if seasonably made.

As to the exceptions for the failure of the court to charge that there was no evidence tending to show a connection between the adhesions, the bowel trouble, and the lengthening of plaintiff's leg, the only fault now urged is that there was no medical testimony showing the probable connection. But as to the trouble with the leg the testimony of Dr. Martin and Dr. Boucher, referred to above, answers the defendant's objection. So far as the bowel trouble is concerned we think evidence showing the absence of any such trouble before the accident and its existence immediately thereafter, coupled with the circumstances of the injury, which afford the only explanation therefor, would justify the jury in inferring the necessary connection. Certainly a layman would not need the assistance of medical testimony to arrive at a proper conclusion as to the cause of the

pain in the bowels immediately following the accident. Considering that the evidence was that the pain persisted until Dr. Boucher saw the plaintiff, his testimony, describing the condition of the intestines found by him as due to adhesions, is not wanting in evidence of causal connection with the accident.

This sufficiently disposes of all exceptions grouped above.

Miss Robbins, the superintendent of the Barre City Hospital where the plaintiff was taken immediately following the accident, was improved as a witness by the plaintiff, and asked to produce the records of his admission to the hospital. She had with her the hospital records relating to the plaintiff, and testified that the first record she had was his admission April 28th. She testified, further, that she did not know who was present at the examination made when the plaintiff was brought to the hospital, and that her record would not show who was present, except the doctors. This was in substance the extent of her direct examination. Upon cross-examination defendant's counsel inquired who the doctors were, and developed the fact that under the rules of the hospital the nurses were required to record everything that they observed, any complaints made by the patient, whether he sleeps well or otherwise, all medicines given the patient, in short, everything that came to their attention during their attendance on the case. She testified, further, that if the nurses did their duty in this respect the chart would contain a complete record of the patient from the time he entered the hospital until he went out. Defendant's counsel then called for the chart, which he later introduced in evidence. Following the production of the records the witness was asked, "Do the rules require the chart to contain the treatment that the nurses give him?" The objection was interposed that if there were any rules they should be produced. Defendant's counsel insisted that it was cross-examination; the court ruled otherwise, excluded the question, and gave the defendant an exception. There are at least two reasons for sustaining the court's ruling: (1) It was not proper cross-examination; and (2) the ground had already been fully covered by testimony received without objection.

The remaining exceptions were to argument of counsel. In plaintiff's opening argument counsel said: "Mr. LeClair was swept across the shop by the car or something, because he was found at the rear end of the trucks, within a few inches of them."

It was objected that there was no such evidence. Counsel continued: "I withdraw the remark that he was swept across by the car, because there is no evidence what swept him across except he was carried from near one end of the shop nearly to the other end; and his feet were pinned down here within at least twenty inches of the rear trucks of the car, and the pictures will show you where that car was, clear over, almost against the livery stable at the other side of the shop." To this statement defendant asked and was allowed an exception.

The evidence makes it reasonably certain that the car struck the wagon gear on which the plaintiff was working, and carried it to a point near the livery stable, taking the plaintiff along with it. When released his feet were near the trucks under the end of the car toward the livery stable. Before the accident he was working near the middle of the shop. While the statement objected to was not strictly accurate, the termini of his perilous journey were not in dispute and were so fixed in the minds of the jury that they were not likely to be misled by the exaggeration. Besides, the injuries complained of have so little, if any, relation to the distance he had been carried that it is not probable, if even possible, that the defendant was prejudiced by the over-statement.

The defendant was allowed an exception to the remark by plaintiff's counsel in the closing agrument that the doctors who took the plaintiff to the hospital were "paid specialists of the defendant." The only point made in the brief is that there was no evidence that they were in the employ of the defendant. Plaintiff seeks to justify the comment by reference to testimony that the doctors referred to were paid by the defendant for their services in attending the plaintiff, and the fact that they were improved by the defendant as expert medical witnesses. It did not appear that the doctors were in the employ of the defendant generally. So far as appeared, they first came into the case as volunteers, answering the emergency call at the time of the accident. They took the plaintiff to the hospital of their own motion and, by some of the evidence, against his protest. Later, the time not appearing, they were directed by someone representing the defendant to care for the plaintiff, which they did, receiving pay therefor from the defendant.

There was no apparent justification for the comment, and, if the matter stood where the exception left it, a serious question

would be presented. But we think the error was cured in the charge. The court referred to the incident, and directed the attention of the jury to the evidence relating to the matter, concluding with a correct instruction as to the use to be made of the evidence in weighing the testimony of the doctors. The charge on the subject was calculated to overcome any prejudice in the minds of the jury that the remark may have created.

Defendant's exceptions do not show reversible error and are overruled.

*Judgment affirmed.*

### MOTION TO MODIFY JUDGMENT.

After the foregoing entry was directed the defendant filed a motion to modify the judgment and for an order that no execution issue against any of the defendant's property now under federal control. Defendant relies upon the Act of Congress of March 21, 1918, providing for the operation of transportation systems while under federal control, etc., and particularly section 10 of said act, wherein it is provided: "But no process, mesne or final, shall be levied against any property under such federal control."

We find nothing in the act affecting the form of the judgment or of the execution to be issued thereon. It is expressly provided that actions at law may be brought against carriers while under federal control and judgments rendered as provided by law without reference to the act. The only limitation now material is that the process, mesne or final, shall not be levied on property of the defendant under federal control. The prohibition of the statute is as effective without the order asked for as it would be if it were granted. Besides, if during the life of the execution the control of the defendant's property should be surrendered by the federal authorities, plaintiff should not be embarrassed by such a restriction in his execution. It follows that the motion is denied.