GIUSEPPE CATTO *v.* LIBERTY GRANITE CO. ET AL.

February Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed May 4, 1928.

144

*C. O. Granai* for the plaintiff.

*Theriault & Hunt* for the defendants.

POWERS, J. The plaintiff claims compensation for permanent injuries to his left eye accidentally received on June 16, 1926, while he was employed as a stone cutter by the defendant granite company. He was, at the time, wearing a pair of stone cutter's glasses with metal frames and heavy lenses. While at his work, a chip of stone flew from the "picker" in use by a nearby workman, and struck the plaintiff's glasses with sufficient force to bend in the frame, break the glass, and injure his eye. . The plaintiff called the attention of his fellow-workman Zorzi to the accident, and the latter observed the condition of the eye and the glasses. The eye became bloodshot and painful—so much so that the plaintiff quit work and went home. The next

morning he sought the services of Dr. Jarvis, an eye specialist, but not finding him he consulted Dr. Wark, who examined the injured eye, diagnosed the difficulty as "pink eye," and prescribed for it. When, a few days later, the plaintiff returned to his work, he discovered that he had suffered a loss of vision in the injured eye. He then gave notice of the injury to his employer and to the commissioner of industries. Soon after, Mr. Hall, the representative of the insurance company, called upon the plaintiff and arranged with him to have the eye examined by Dr. Jarvis, which was done on September 19, 1926. The plaintiff's claim for compensation went to a hearing before the commissioner of industries on December 29, 1926, during which, by an arrangement made by the commissioner, the eye was examined by Dr. Newcomb, a specialist. The commissioner dismissed the claim and the plaintiff appealed. The case was tried by jury in the county court and a judgment for the plaintiff was entered therein on special verdicts returned. The defendants excepted.

 Dr. Newcomb was the plaintiff's first medical witness. His qualifications as an expert being conceded, he testified that he examined the plaintiff's eyes on December 31, 1926, and that he found an opacity or cloudiness of both lens and cornea of the left eye which caused a 35% loss of vision therein. Upon objection by the defendants that it should first be made to appear that the condition found was attributable to the accident, this evidence was received "subject to the connecting evidence being furnished," and defendants' exception in case of a failure therein, was allowed.

This exception was not directed to the order of proof merely; its force and effect depend wholly upon the question whether such connection was made. If it was, the exception is without merit. If it was not, the exception must be sustained, *State* v. *Meader,* 54 Vt. 126, 130; *Townshend* v. *Townshend,* 84 Vt. 315, 318, 79 Atl. 388, and the judgment must be reversed as the testimony bore upon a vital element of the plaintiff's case.

 Under this exception, and again under an exception saved when their motion for a verdict filed at the close of the evidence was overruled, the defendants insist that there is no evidence in the transcript, which is before us, tending to show that the loss of vision was caused by the accident. That there was little medical testimony to that effect must be admitted.

The most that can be gleaned from the testimony of the doctors is that a blow on the eye might cause the condition found if it was severe enough to cause inflammation. But medical testimony was not necessary to establish the connection of which we are speaking. *LeClair* v. *Montpelier & Wells River Railroad,* 93 Vt. 92, 96, 106 Atl. 587. There was evidence that prior to this accident the plaintiff's eyes were normal; that this eye had never been injured before; that it had always given full service; that immediately after the accident, it became inflamed and painful; and that since then the plaintiff has not been able to see with it as before. This testimony comes from the plaintiff, himself, to be sure, but this fact goes to its weight, merely. There is no rule of law that requires that these facts be proved by the testimony of another person. In all the facts hereinbefore recited we have given the plaintiff the benefit of the rule requiring us to construe the evidence in his favor; and remembering that we are dealing with the tendency of the evidence and not its weight, we hold that these exceptions are unavailing and that the testimony in question was properly in the case.

█ Nor are the other grounds of the motion for a verdict well taken. Dr. Newcomb testified to the effect that any change in the condition of the eye would be likely to occur within two or three months; and the plaintiff testified that the eye "is sore now and then." The defendant construes this testimony of the plaintiff to relate to another and recent injury to the same eye, but the transcript shows that the witness intended it to apply to the injury in question. The foregoing was evidence enough to warrant an inference of permanent injury.

█ The defendants moved to set aside the verdict, and excepted when this motion was overruled. So far as the motion was based upon the lack of evidence it raised the same questions as those already considered and disposed of. But the further ground that the verdict was against the weight of the evidence—that the defendants' evidence so far outweighed that of the plaintiff that the court should not allow the verdict to stand—presents a different question in that this motion is addressed to the discretion of the trial court, while the other was not. *Bradley* v. *Blandin,* 94 Vt. 243, 257, 110 Atl. 309.

██ We have heretofore had occasion to allude to the difficulty and embarrassment of interfering with verdicts which the trial court has refused to set aside. *Smith* v. *Martin,* 93 Vt.

111, 122, 106 Atl. 666; *Platt's Admx.* v.' *Shields and Conant,* 96 Vt. 257, 270, 119 Atl. 520. Nevertheless, we have the power, *Parker* v. *Boston & Maine Railroad,* 84 Vt. 329, 349, 79 Atl. 865, and it would be our plain duty to right the wrong if the trial court failed in its duty toward such verdict. *Smith* v. *Martin, supra; Platt's Admx.* v. *Shields and Conant,* 96 Vt. 257, 272, 119 Atl. 520. But we proceed with caution in all such cases. We do not upset a verdict merely because the evidence preponderates against it. To justify this Court in sustaining the exception under discussion it must appear from the record that the evidence so preponderates against the verdict as to leave no reasonable basis on which it can stand. In the nature of things no more specific rule can be laid down. Each case must be decided upon the strength of its "appeal to the judg-ment and conscience" of this Court, guided by established rules of law. See *In re Ketcham,* 92 Vt. 280, 287, 102 Atl. 1032.

Upon a careful study of the record before us, we are not convinced that the case is so clearly with the defendants as to bring it within the rule referred to.

*Judgment affirmed. Let the result be certified to the com-missioner of industries.*