MABELLE A. HOWLEY *v.* MAX KANTOR.

Special Term at Rutland, November, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 4, 1933.

*Clayton H. Kinney* for the defendant.

*Novak & Bloomer* for the plaintiff.

GRAHAM, J.  ■  The plaintiff was struck by the defendant's automobile and injured while she was crossing Merchants Row in the city of Rutland at about nine o'clock in the evening of March 4, 1930. It is not questioned that the evidence reasonably justified a finding by the jury that negligence of the defendant proximately caused the accident, but the question of plaintiff's contributory negligence, as a matter of law, is raised by defendant's exception to the denial of his motion for a directed verdict.

Merchants Row is a busy street in the heart of the business section. This streets runs north and south, and it is 52 feet wide between curbs. The plaintiff started to cross from the westerly to the easterly curb "between crossings." About 170 feet northerly of this point, West Street intersects this street, and a regular crossing is there provided for pedestrians. Traffic at the intersection is directed by "stop" and "go" signal lights.

The plaintiff looked in both directions before she left the westerly curb. There was no traffic from the south, and there was then no traffic moving between her and the intersection. She saw a bus facing east on West Street. When she reached the center of the street, the bus was proceeding southerly on Merchants Row, and was about 70 feet distant from her. The bus was 25 feet long and 8 feet wide, and, as it was proceeding, its east side was near the center line of the street. At the center of the street, and after the plaintiff had crossed the lane of

■

travel occupied by the bus, she looked south and saw that no traffic was approaching from that direction. She then directed her attention to the lights of the bus, and started to cross the easterly half of the street.

The defendant followed the bus a short distance south of the West Street intersection, and then turned his car to the left from behind the bus and was driving in the easterly lane of traffic, passing the bus, when he struck the plaintiff, who was 17 feet from the easterly curb.

The defendant does not argue that the plaintiff did not have the legal right to cross the street at a place other than a regular crossing, but he does contend that when the plaintiff chose to cross at such a place, the prudent man rule required that she exercise a greater degree of vigilance for her own safety. When tested by this strict rule, we think the facts clearly made it a jury question whether the plaintiff's conduct met its requirements. It may be that if the plaintiff had looked to the rear of the bus, and not at its lights, she might have seen the defendant's car turn into her lane of travel in time to have avoided the accident, but even a person situated as the plaintiff was can hardly be expected to look in all directions at the same instant. After she had reached and passed the center of the street, her attention, naturally, would be chiefly directed to the south—the direction from which traffic would most likely be approaching her. *Aiken* v. *Metcalf*, 90 Vt. 196, 200, 97 Atl. 669; *Parker, Admr.* v. *Smith*, 100 Vt. 130, 134, 135 Atl. 495. It cannot be said, as a matter of law, that the plaintiff ought reasonably to have anticipated that the defendant would suddenly and without ample warning drive his car from behind the moving bus, into the easterly path of traffic, and run her down. The motion was properly denied.

██ The defendant requested the court to charge that ''a person in attempting to cross a public street or highway at a point other than one provided for pedestrians is required to use greater care than when such person crosses at a point provided for pedestrians.'' The court did not comply with this request, but told the jury that it was for them to say whether a prudent person would in those circumstances exercise the same or a higher degree of care than when crossing at a regular place provided for foot traffic. In other words, the rule of conduct applicable to the plaintiff's situation was left to the jury to fix

with only the prudent man doctrine to guide them. The question of the accuracy of these instructions is saved by appropriate exceptions.

The use of the term "greater degree of care" as applied to the plaintiff's situation may be misleading, and technically inaccurate. There is but one standard of care to be applied to a person crossing at either place—the care and prudence of a prudent person under the circumstances. However, the practical application of the rule is quite different. The precautions to be taken increase with the hazards. *Aiken* v. *Metcalf, supra;* see *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 162 Atl. 373, 375. At regular crossings where pedestrians usually cross, the driver of a motor vehicle is required to be more vigilant in keeping a lookout for foot travelers than at points between crossings, and at points where the vigilance of the driver is somewhat relaxed, the vigilance and watchfulness required of the foot traveler is correspondingly increased. This is due care under the circumstances. But it is not a question of fact to be left to the jury in each particular case; it is a rule of law, which has been drawn from the common experience of travelers in our public streets, and is recognized and applied by courts generally. *Hizam* v. *Blackman,* 103 Conn. 547, 131 Atl. 415; *Rhoads* v. *Herbert,* 298 Pa. 522, 148 Atl. 693; see decisions collected in 14 A. L. R. 1176, and 67 A. L. R. 313; see, also, *Steele* v. *Fuller,* 104 Vt. 303, 158 Atl. 666. The charge of the court deprived the defendant of the benefit of the rule, and constitutes reversible error.

The defendant excepted to the charge that the statute (G. L. 4705, subdivision IV) provides that a vehicle overtaking another vehicle going in the same direction shall pass to the left of the vehicle so overtaken, but in so doing shall exercise due care and shall not pass to the left of the center of the highway, unless the way ahead is clear of approaching traffic, and, if the way ahead was not clear of approaching traffic, then it was the defendant's duty not to attempt to pass until the way was clear. The evidence is undisputed that the way ahead was clear at the time the defendant attempted to pass the bus, except for the presence of the plaintiff therein. The point of the exception is that a person crossing the street is not "approaching traffic" within the meaning of the statute. The statute must have a reasonable construction, and one that will carry out rather than defeat the evident purpose and intention

of the Legislature. *In re James,* 99 Vt. 265, 271, 132 Atl. 40. In interpreting a particular word of a statute, regard must be had to the nature of the subject-matter and the intention of the Legislature as evidenced by the whole provision. *State v. Kelley,* 86 Vt. 237, 239, 84 Atl. 861, 42 L. R. A. (N. S.) 437.

The intention of the Legislature was to secure the safety of all classes of travelers, who were rightfully using the way to be traversed by the passing vehicle, and without regard to what direction those travelers were proceeding. The construction urged by the defendant would rather increase than avoid the dangers intended to be guarded against, and would lead to absurd results. See *Wadsworth v. Marshall,* 88 Me. 263, 34 Atl. 30, 32 L. R. A. 588. This case involved the construction of a statute requiring notice of blasting to be given to persons *approaching* at the time, and the word, when considered with reference to the dangers guarded against, was held to be equivalent to "in proximity to the place of explosion," "within the limit of danger." The exception is not sustained.

Doctor Quigley, a witness for the plaintiff, testified that he discovered upon examination an abnormal growth half the size of a hen's egg in the plaintiff's left breast, which in his opinion was caused by trauma or injury. He also testified that such growths may be either simple tumors, which are easily removed and permanently cured, or they may be malignant or cancerous, and result in permanent and serious consequences; that to determine the character of this growth it would be necessary to remove it by surgery and examine it under a microscope. The witness was then asked: ."Q. Now taking that situation as you then found it and without using surgery, have you some judgment as to a prognosis one way or the other based upon your experience and the percentages of how they turn out? A. I have. Q. Won't you tell us what that is?" Subject to the defendant's objection and exception, as being too speculative, the witness answered: "Run about eighty per cent cancerous." Just before this testimony was received, counsel for the plaintiff had informed the court that he intended to offer the doctor's opinion whether this growth was cancerous. The record, then, clearly justifies the conclusion that this particular evidence was received as a partial support for the opinion subsequently to be offered. For this limited purpose the testimony was not evidentially improper, but whether this evidence, without the

promised medical opinion directed to the particular condition and symptoms of the plaintiff, was sufficient to support a recovery for such an alleged consequence, presents a different and more serious question. The only medical testimony to the point was that which we have quoted. Besides, the doctor later testified that "as it stands it may be one as well as the other," and that "what it is at this stage is pure speculation."

The defendant requested the court to charge the jury that the evidence was not sufficient to justify a finding that there is a cancerous or malignant growth in the plaintiff's left breast, and that they were not to consider such a condition as an element of damages. The court did not comply with this request, but left it to the jury to award such damages as they might find from the evidence the plaintiff would suffer in the future. The defendant excepted to the failure of the court to charge as requested. Thus it appears that the quoted medical testimony was left in the case for the consideration of the jury on the question of cancerous growth as one of the elements of future damages.

Competent expert medical testimony was essential to lay a foundation for this claim made by the plaintiff. *Ryder* v. *Vermont Last Block Co.*, 91 Vt. 158, 167, 99 Atl. 733; see *State* v. *Rounds*, 104 Vt. 442, 160 Atl. 249, 253, 254. To support such a claim, the evidence must be of such a character that the jury can find that there is a reasonable certainty or a reasonable probability that the apprehended future consequences will ensue from the original injury. Consequences which are contingent, speculative, or merely possible are not entitled to consideration in ascertaining the damages. *Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305, 306; 17 C. J. 764; note, 21 Ann. Cas. 326.

The record before us does not disclose any opinion of the medical witness as to the probable future development and result of the plaintiff's breast condition. His answer, "run about eighty per cent. cancerous," does not have the effect claimed for it. The witness did not say that in his opinion the chances are eighty per cent. that the growth is cancerous, but, rather, as is clearly indicated, that from his experience and the history of other cases injury to the breast producing tumor developed about eighty per cent. cancerous.

And conclusion from this evidence that the growth in the plaintiff's breast is cancerous is too conjectural and speculative

to furnish a basis for the assessment of damages. The medical testimony went to the jury in such a way as to leave them free to speculate and guess about the probable effect of the plaintiff's injuries, and it must have materially influenced the amount of the verdict. The failure to comply with the defendant's request was prejudicial error.

*Judgment reversed, and cause remanded.*