MARTHA K. WIDHAM *v.* TOWN OF BRATTLEBORO.

January Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 7, 1933.

212

*Frank E. Barber* and *Orrin B. Hughes* for the defendant.

*Carpenter & Clawson* for the plaintiff.

MOULTON, J. This is an action in tort, brought under the provisions of G. L. 4615, as amended by No. 128, Acts of 1921, to recover for damages claimed to have been sustained by the insufficiency of a culvert which the defendant town was liable to keep in repair. The defects alleged were the lack of capacity of culvert to carry off the water, so that it became clogged with snow and ice and allowed water to flow and freeze upon the highway over the culvert, and the lack of a suitable guard rail. There was a trial by jury, with verdict for the plaintiff, and the case is before us on defendant's exceptions. These exceptions pertain to the refusal of the trial court to direct a verdict, to set aside the verdict, and to charge in accordance with certain written requests.

Taken, as it must be, in the light most favorable for the plaintiff, the evidence tended to show the following facts: The culvert consisted of a 12-inch corrugated, galvanized iron pipe, and, at the center of the road, the top of it was 2½ feet below the surface. At the outlet, on the easterly side of the highway, it was about four feet below the level of the traveled track. On this side the ground fell sharply away from the road toward the West River and the culvert pipe protruded from the bank for a distance of six feet and was covered by a rough masonry. On the westerly side, at the intake, there was a stone and cement header, the top of which was ten inches above the top of the pipe, and four inches below the surface of the center of the highway. The ground on this side is higher than the surface of the road, and there was a ditch and basin at the intake. The culvert was for the purpose of taking away the surface water and seepage and there was no defined stream passing through it.

The accident occurred on January 24, 1932, at about noon. The basin and intake of the culvert were filled with snow and ice, and the highway was covered with ice, and sloped from the center toward the east, where the culvert emerged from the bank. There was no guard rail on this side, although, at the edge of the traveled track (which was 18 feet in width) there was a raised shoulder three feet wide. The road was rough and

uneven and three ruts or shallow trenches had been cut across it from a point near the intake, by whom did not appear.

The plaintiff was driving a Ford cabriolet, equipped with chains on the rear wheels, in a northerly direction, at a rate of about 15 miles an hour. Her sister, Lillian Widham, was riding in the rumble seat, on the right-hand side. A Miss Ogren sat in the same seat, on the left side. As the car passed the cement header of the culvert, the front wheels fell into a depression in the road, and the car swayed to the right toward the river. The plaintiff turned the wheel to the left, the rear end of the car swung further to the right. She pressed the accelerator with her foot and the car plunged forward, and after colliding with a post set in the edge of the highway, went over the bank, and, striking some cribwork in its progress fell into the river, coming to rest at point distant 59 feet from the culvert. The details of the evidence, so far as material, will be considered later on.

■■ In order that there may be liability on the part of the defendant town, under the statute upon which this action is predicated, it must appear that the accident which caused the injury occurred while the plaintiff was passing over the culvert in question, and that the insufficiency or want of repair of the structure itself was the direct cause of the injuries sustained. *Ford* v. *Town of Braintree*, 64 Vt. 144, 146, 23 Atl. 633. And, of course, it must also appear that the plaintiff was free from contributory negligence. *Bigelow, Admr.* v. *Town of St. Johnsbury*, 92 Vt. 423, 431, 105 Atl. 34. The lack of a guard rail, suitable to the place and condition, may constitute an insufficiency or want of repair of the culvert within the meaning of the act. *Bigelow, Admr.* v. *Town of St. Johnsbury, supra; Bancroft* v. *Town of East Montpelier*, 94 Vt. 163, 165, 109 Atl. 39; *Maynard* v. *Town of Westfield*, 87 Vt. 532, 537, 90 Atl. 504; *Castle* v. *Town of Guilford*, 86 Vt. 540, 546, 86 Atl. 804. Although written in regard to the former, and now repealed, law concerning the liability of towns for insufficiency of the highway, the words of *Rowell*, J., in *Drew* v. *Sutton*, 55 Vt. 586, 589, 590, 45 A. R. 644, are applicable to the case of a culvert: "If a railing is lacking where one is necessary to the safety of travellers, the travelled way itself is thereby rendered unsafe and out of repair. And it makes no difference whether this necessity for a railing is created by the condition of things within the limits of the way or without the limits, but in dan-

gerous proximity to the way. In either case the question is, Does the safety of the traveller require a railing? Is the road reasonably safe and sufficient without one?''

It is not claimed that the ice and inequalities on the roadway immediately over the culvert were the direct cause of the accident, but it is argued that this condition made the lack of a suitable guard rail such an insufficiency as imposed liability upon the defendant. Indeed, the evidence does not tend to show that the ice was the result of the condition of the culvert. True, there was ice in the ditches and basin and obstructing the pipe; but it did not rise above the cement header, which, according to all the witnesses who testified regarding it, projected one to one and one-half inches above the ice, and the top of the header itself was 4 inches below the surface of the road at the center of the highway. So the ice at the side of the road and at the intake of the culvert was at least 5 inches lower than the center of the traveled track, and, therefore, it is impossible to suppose that the obstruction of the culvert had anything to do with the icy condition of the roadway above it at least on the side toward the river. And so, too, there was no evidence connecting the culvert with the roughness and ruts in the highway at that point. The culvert pipe was not broken. In fact, so far as the ice and ruts were concerned, there seems to have been no difference between the highway at the culvert and the highway for some distance on either side of it.

■■ Before considering whether this condition was such as required the erection and maintenance of a guard rail on the easterly side of the culvert, we may inquire whether there was evidence fairly and reasonably tending to show that the accident took place at that point, which, as we have seen, is a necessary element in establishing the liability of the defendant. In order to make a jury question it is not enough that there is some evidence tending to support the plaintiff's case; it must also be evidence of such quantity and character as to justify the jury, acting reasonably, to predicate a verdict in favor of the party having the burden of proof, and ''though there is some evidence in the record tending to establish the claim, if the countervailing evidence so preponderates over it that it would be an abuse of the trial court's discretion to refuse to set aside a plaintiff's verdict founded thereon, a motion for a defendant's verdict

may, without error, be granted.'' *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 447, 448, 129 Atl. 317, 322.

██ ██ The testimony supporting the claim that the accident occurred at the culvert was that of the plaintiff and her sister, Lillian. The former said that, as she was opposite the header, and the rear of the car swung toward the easterly side of the road, one rear wheel went over the bank, but there is nothing here to show precisely where the last-named incident took place. Lillian's testimony was more explicit. She said that, as the wheel went over, and the car tipped, she looked down and saw the projecting end of the culvert pipe below the car. On cross-examination she said that she did not look forward or backward, but down from her seat.

On the other hand, it appeared without dispute that the track of an automobile wheel, equipped with chains, began at a point distant at least $2\frac{1}{2}$ feet northerly of the culvert and extended in a northerly direction for at least $13\frac{1}{10}$ feet, commencing in the edge of the shoulder nearer the bank and proceeding along the raised shoulder, until it disappeared over the bank. A post, set in the shoulder, 10 feet northerly from the culvert was scarred or gouged on the side toward the highway. It is admitted by both parties that this track was made by one of the rear wheels of the plaintiff's car, and that the scar on the post was made when the rear of the right hand running board collided with it. The plaintiff claimed on argument that the wheel track was made by the left rear wheel, the right rear wheel being over the shoulder as the car proceeded, but this cannot be so, for, if it were, the automobile would have struck the post head on, and not with the right-hand running board. The only possible conclusion is that the track was made by the right rear wheel, and that, therefore, that part of the car did not go over the bank above the culvert, but was still in the road or on the shoulder after the culvert had been passed. It is not claimed that the wheel left the road and then returned to it. We cannot ignore the undisputed physical facts shown by the record. *Wellman, Admr.* v. *Wales, supra,* at page 443 of 98 Vt., 129 Atl. 317; *Riggie* v. *Grand Trunk Ry. Co.,* 93 Vt. 282, 286, 107 Atl. 126. The testimony of Lillian Widham, when met by the countervailing evidence of the wheel mark is not, as we conceive, evidence of such quantity and character as to justify

a verdict for the plaintiff. As we have seen, the testimony of the plaintiff does not add to its strength.

Under these circumstances we hold that the evidence, taken most strongly for the plaintiff, failed to make a question for the jury whether the accident took place at the culvert. No issue as to an approach to the culvert was submitted at the trial, or could have been, so far as the record discloses, for obviously there was no approach within the meaning of the law.

If there was a breach of duty in failing to provide a suitable guard rail, it was not the direct cause of the injury to the plaintiff, and is, therefore, immaterial. The denial of the motion for a directed verdict was error.

In view of what we have said, it is unnecessary to consider the other exceptions, which involve the question of plaintiff's contributory negligence, the refusal to charge as requested, and the refusal to set aside the verdict.

*Judgment reversed, and judgment for the defendant to recover its costs.*

### On Motion for Reargument.

MOULTON, J. There are fourteen reasons alleged why this motion for reargument should be granted, wherein it is submitted that certain testimony has been overlooked and certain claims of the plaintiff misapprehended.

The first ground is that, in stating that the elevation of the culvert header was four inches below the elevation of the center of the road, we have failed to take into consideration the fact that this measurement was taken some three months after the day of the accident, while certain work of scraping and crowning the highway was in progress, so that the conditions had been changed. But the extent of the change at this particular point, if there was any at all in this respect, did not appear, and to attempt to say what it might have been would be to indulge in speculation. In the absence of testimony to the contrary, it may well be assumed as indeed it appears to have been upon the argument, that whatever difference there may have been was immaterial.

The next ground is that in saying that the surface of the highway "sloped from the center toward the east," certain

testimony to the effect that the slope existed across the entire road has been overlooked. But the automobile was, according to the evidence, about in the middle of the road when it started to slide toward the easterly edge, and so the slope from the center was the important thing.

The next ground is that the statement that there was a raised shoulder on the easterly side of the road is inaccurate, because this raised portion was, according to the evidence, a "brow" or "ridge," higher than, and outside of, the traveled track. This objection appears to be a play upon words. The same witness who used the word "brow" also referred to it as a "shoulder," and the latter term was used on argument. There is no intimation in the opinion that, whatever its name, it was within the traveled track.

It is also argued that in saying that as the car passed the cement header of the culvert the front wheels fell into a depression in the road and the car swerved toward the river, we have overlooked the testimony that this happened opposite the header and that the depression was a rut running across the road practically parallel with the line of the culvert, and that the car, in swerving, traveled ⅔ of its length of 13 feet. This testimony, however, does not affect the accuracy of the statement.

Again, it is claimed that the post with which the automobile collided is not as stated in the opinion, "set in the edge of the highway," but in the edge of the bank. This is a distinction without a difference. It was set in the outer edge of the raised shoulder, and, indeed, the opinion elsewhere refers to it as set in the edge of the shoulder. The circumstances that this point was also where the bank commenced its slope, and that the post inclined outward, do not make the description erroneous.

In making the statement that "so far as the ice and ruts were concerned, there seems to have been no difference between the highway at the culvert, and the highway for some distance on either side of it," it is submitted that the testimony of the plaintiff that she noticed "that raised up portion" which sloped from the header down has been overlooked. Just what is meant by "raised up portion" is not clear. The context shows no mention of ice. The photographs of the culvert and its vicinity taken the day of the accident and put in evidence by the plaintiff, do not show ice spreading down from the header over the

road, and amply justify what is said in the opinion as to the condition of the road on each side of the culvert.

The plaintiff says that her theory was that the absence of a guard rail was the proximate cause of the accident, and that the other insufficiencies of the culvert were contributing causes, and that this claim is misinterpreted in the statement in the opinion that it was not claimed that the ice and inequalities in the roadway were the direct cause of the accident, but that it was argued that this condition made the lack of a suitable railing such an insufficiency as imposed liability upon the defendant town. By "other insufficiencies" we assume the plaintiff to mean the ice and inequalities, since nothing else is pointed out. The opinion only paraphrased the plaintiff's claim. The conclusion that the condition of the roadway was not the result of the condition of the culvert was reached after careful consideration, and no reason is perceived for receding from it. It should be borne in mind, also, that, whatever the origin of the ice, the lack of the guard rail was claimed to be the proximate cause, and this was the vital issue.

Another ground of the motion is that in saying that it was not claimed that the right rear wheel of the automobile left the road and then returned to it, the opinion misconstrues the theory of the plaintiff that, upon collision with the post, when, according to her claim the rear right wheel was over the bank, the impact pulled it up the bank and back into the road, and that the car circled the post and then plunged over. That this was the theory was well understood, but an examination of the opinion will show that what is said has reference to the point at the culvert where the plaintiff insisted that the wheel first went over. In this connection, it may be noted that the plaintiff now concedes that her counsel was in error in arguing that the wheel track was made by the left rear wheel, and agrees that it was the mark of the right rear wheel, as it was concluded from the evidence, that it must have been. Since the only bearing of the statement in the opinion was upon the question as to which wheel made the track, and since there is now no dispute upon this point, it would be harmless, even if erroneous.

The remaining grounds of the motion may be grouped together, since they are all, in effect, that in holding that the evidence did not fairly and reasonably show that the right rear wheel went over the bank above place where the culvert pipe

protruded from the bank, the evidence has not been viewed in the most favorable light for the plaintiff. This question was fully argued, and decided after careful consideration of the testimony of the plaintiff and her sister, which was pointed out in the plaintiff's brief and is again, by the motion, pressed upon our attention. Upon reexamination of it we are not disposed to recede from the conclusion reached in the opinion.

An inaccuracy in the opinion has been discovered, which, however, does not affect the result. It was erroneously stated that the wheel track commenced in the edge of the shoulder, next to the roadway, while in fact it commenced on the outer edge. This has been corrected.

*Motion for reargument denied. Let full entry go down.*

LILLIAN WIDHAM *v.* TOWN OF BRATTLEBORO.

January Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 7, 1933.

*Frank E. Barber* and *Orrin B. Hughes* for the defendant.

*Carpenter & Clawson* for the plaintiff.