RUTH E. HASTINGS, B. N. F. *v.* EDWARD MURRAY AND ZIFFORD BARCOMB.

February Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 13, 1941.

*Austin & Edmunds* for defendant Barcomb.

*Raymond Trainor, Henry F. Black* and *Alfred A. Guarino* for plaintiff.

BUTTLES, J.   On September 23, 1939, the plaintiff, while a gratuitous passenger in the sedan automobile owned and driven by the defendant Barcomb, was injured when that car collided with an automobile driven by the defendant Murray.   This tort action having been brought against both defendants to recover the resulting damages and Murray not appearing, the plaintiff had judgment against him by default for the amount of damages assessed by the jury.   At the same time a verdict was returned against Barcomb upon which judgment was also rendered. There being no claim of wilful negligence, plaintiff was not entitled to recover as against Barcomb, hereinafter termed the defendant, except upon proof of gross negligence. P. L. 5113.

The defendant has briefed an exception to the denial of his motion, seasonably made, for a directed verdict.   This motion challenges the sufficiency of the evidence to warrant a verdict

against this defendant on the ground of gross negligence and also challenges the sufficiency of the evidence to show freedom of the plaintiff from contributory negligence.

From the evidence, taken in the light most favorable to the plaintiff, the following facts might reasonably be found by the jury. Prior to the accident the Barcomb car was proceeding easterly in the southerly lane of the two lane paved highway leading from Burlington to Montpelier and was approaching a filling station or garage known as Shattuck's garage situated on the south side of the highway a short distance east of the Village of Williston. The plaintiff was seated in the middle of the front seat of the car with the defendant on her left and another young lady on her right. The concrete portion of the road is 18 feet wide and outside of the concrete, on each side for the whole distance covered by the evidence, there is a black top shoulder two and one half to three feet wide. For this whole distance the road is practically straight, but going west from the garage there is a slight upgrade for some 90 feet and beyond that a down grade westward. East of the garage there are also vertical curves in the grade. The weather was clear and the surface of the road was dry. The defendant's car was equipped with good brakes in good condition. While the Barcomb car was still some distance west of the garage a line of five cars, of which the defendant Murray's car was the fourth, was approaching from the east in its own lane of traffic. Before reaching the garage the Murray car pulled out of line in an endeavor to pass the cars ahead of it, which it did not succeed in doing. The Murray car and the defendant's car continued to approach each other in the defendant's traffic lane until both cars pulled out of the road to the south and collided, head on, in the garage yard near the easterly end of the building. The defendant admits seeing the Murray car as it pulled out of the line of cars, but there is a sharp conflict in the evidence as to the distance that then separated the cars. The longest distance fixed is by the plaintiff at about 1600 feet, but the defendant's evidence tends to show that this distance was impossible because of the vertical curves in the road above referred to. Elsewhere the plaintiff fixes this distance at 900 to 1000 feet and she treats that as the distance in her brief. The speed of the defendant's

car was 40 to 50 miles per hour. There was testimony that there was no slackening of his speed until the collision, but the skid mark hereinafter referred to indicates that his brakes were applied for 43.5 feet before the impact. The garage building is about 50 feet long, the front being about 20 feet at the west end and 22 feet at the east end from the edge of the pavement. About midway between the building and the highway there are two cement bases or "islands" for gasoline pumps. There is a gravel surface in front of the garage and to the east and west thereof, coming out to the edge of the shoulder of the road. Near the western edge of this gravelled strip there is a telephone pole which stands six feet from the shoulder of the road and about 61 feet from the west end of the garage. Before a car going east gets to where it can pull out at the garage there is a "rather deep ditch" at the right. How far to the west this ditch extends does not appear.

██ The plaintiff testified that when the defendant started to turn to his right out of the road his car was not more than five feet from the Murray car, but she must be seriously in error in this estimate of distance. In fact she admits such error in her brief. The undisputed evidence shows that there was a skid mark on the yard surface 43.5 feet in length, extending easterly from the pavement to a point a little back of the right front wheel of the Barcomb car as observed by the inspector after the accident and before the cars had been moved. This mark, at its easterly end, was 5.8 feet from the edge of the concrete. That it shows the course of the right wheels of the Barcomb car as it was driven off the road is not questioned. We cannot ignore the undisputed physical facts shown by the record, nor can we accept the testimony of the plaintiff which is inconsistent therewith. *Widham* v. *Brattleboro*, 105 Vt. 210, 215, 166 Atl. 22; *St. Johnsbury* v. *Cenedalla et al.*, 109 Vt. 174, 183, 194 Atl. 382. We conclude that when the defendant started to pull out of the road the distance between the cars was not less than 43.5 feet plus whatever distance the Murray car travelled before the collision.

██ Gross negligence, as the term is used in our statute, has been defined in *Shaw, Admr.* v. *Moore*, 104 Vt. 529, 531, 162 Atl. 373, 86 A. L. R. 1139, and in later cases and we need not

here repeat the definition. The plaintiff had the burden of making out a case which warranted submission of the question of gross negligence, and the question now is whether she has sustained that burden. *Kelley* v. *Anthony,* 110 Vt. 490, 495, 8 Atl. 2d. 641.

■ The rule that one driving an automobile who sees a car approaching on the wrong side of the road has a right to assume at the outset that it will observe the law of the road and seasonably move over to its right side so as to pass without interference, *Hatch* v. *Daniels,* 96 Vt. 89, 117 Atl. 105, can here have only limited application because of the presence of other cars on Murray's side of the road. But the rule would apply as the defendant observed the Murray car starting to leave its place in the line, and until it should have been apparent that that car would not or could not readily get back to its own side.

■ While it is true, as was said in *Powers* v. *Lackey,* 109 Vt. 505, 506, 1 Atl. 2d. 693, and in others of our cases, that there is no concrete rule by which the existence of gross negligence can be determined, for each case must be judged according to its own facts, yet it will be helpful to consider the similarity or dissimilarity of the facts here to those in other cases which have come before this Court. When the defendant realized or should have realized his danger he was caught in a trap somewhat similar to that in which the defendant in *Garvey* v. *Michaud et al.,* 108 Vt. 226, 184 Atl. 712, found himself. He could not turn to his left because of danger from the oncoming cars, and on his right for at least a part of his course—all of it so far as appears—there was a rather deep ditch with a telephone pole beyond the place where the ditch ended.

One dissimilarity between the facts in this case and those disclosed by the evidence in cases like *Garvey* v. *Michaud, supra, Hall* v. *Royce et al.,* 109 Vt. 99, 192 Atl. 193, and *Farren* v. *McMahon et al.,* 110 Vt. 55, 1 Atl. 2d. 726, is important. In each of those cases the obstructing vehicle was either stationary or was moving away from the defendant so that the timely stopping of his car would have prevented the collision, but in this case stopping the defendant's car would not have insured safety unless the Murray car also stopped or was diverted from its course. The defendant could see the garage ahead of him on

his right. He was familiar with the road, with the garage and the pumps and knew, in a general way, the distance of the garage from the highway. Like the defendant in *Franzoni* v. *Ravenna et al.*, 105 Vt. 64, 163 Atl. 564, this defendant tried to avoid the oncoming car, without success, as the event proved, and perhaps with questionable judgment. It should be noted, however, that the defendant's efforts to avoid the accident might have been successful had it not been for an unexpected occurrence over which he had no control, that being the turning of the Murray car to its left into the new course of the defendant's car.

The evidence as a whole fails to show anything more than an error of judgment or loss of presence of mind, and so was insufficient to warrant a finding that the defendant operated his car with the indifference to his duty or utter forgetfulness of the safety of his guest which we have said constitutes gross negligence. *Franzoni* v. *Ravenna, supra; Anderson* v. *Olson,* 106 Vt. 70, 72, 169 Atl. 781; *Kelley* v. *Anthony,* 110 Vt. 490, 495, 8 Atl. 2d. 641.

The denial of defendant's motion was error, and it is unnecessary to consider the other ground upon which the motion was based or the defendant's exceptions to the charge of the court.

*Judgment as to defendant Murray affirmed; as to defendant Barcomb, judgment reversed and judgment for this defendant to recover his costs.*