Judith E. GREGORY and William H. Gregory, Plaintiffs-Appellees,

v.

Philip D. HARDGROVE, Defendant-Appellant.

No. 164, Docket 33637.

United States Court of Appeals Second Circuit.

Argued Oct. 27, 1969.

Decided Dec. 22, 1969.

Robinson E. Keyes, Rutland, Vt. (Ryan, Smith & Carbine, and Webber & Costello, Rutland, Vt., on the counterclaim for Judith E. Gregory, on the brief), for plaintiffs-appellees.

Richard J. Burke, New York, N. Y. (Coffrin & Pierson, Burlington, Vt., on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and MEDINA and FEINBERG, Circuit Judges.

MEDINA, Circuit Judge.

This diversity case involves a collision between two automobiles at the crest of a hill on a narrow, typical, back country road in Vermont. As the cars approached each other from opposite directions it is understandable that neither driver was conscious of the nearby presence of the other until almost the moment of impact. There was ample evidence of excessive speed by Hardgrove and of his failure to keep his car on his side of the road. Moreover, the jury was warranted in finding no contributory negligence on the part of Mrs. Gregory, who testified she kept as far to her right as she could when "she caught this flash of pink coming very fast" and that she was driving at about 20 or 25 miles an hour. Her version was corroborated by other proof, including the testimony of the passenger in the Hardgrove vehicle and the fact that the force of the collision pushed her car backwards about 10 feet. The verdict of $65,000 was, if anything, less than it might have been in the light of her extreme suffering and the extensive nature of her injuries. In the light of F. R.Civ.P. 54(c) and Riggs, Ferris & Greer v. Lillibridge, 316 F.2d 60, 62–63 (2d Cir. 1963), Hardgrove had sufficient notice that the recovery by Mrs. Gregory might exceed the amount of the insurance carried by him. The following points argued by appellant Hardgrove are governed by Vermont law.

On the basis of what appellant calls "undisputed physical facts" it is claimed that Mrs. Gregory was guilty of contributory negligence as a matter of law and that the complaint of the two Gregorys should have been dismissed at the trial. This is because State Police Officer Robinson, one of the witnesses called by the Gregorys, interpreted one or more of the photographs as showing skid marks indicating that the Gregory car was somewhat to the left of the unmarked center of the road. The difficulty with this argument, as pointed out by Judge Leddy, is that the facts are not undisputed. To begin with, it is not clear just which skid marks appearing in the photographs were made by the Gregory car. Officer Robinson did not see the accident. And, even if he had seen it, there was a question of how much of his testimony the jury chose to accept and how much of it the jury chose to reject. The testimony of Mrs. Gregory was, as above stated, that as soon as she saw "this flash of pink" she kept as far to her right as she could. Other proof substantiated her testimony. Of course, the fact that Robinson was called as a witness by the Gregorys did not require the jury to accept any part of his testimony as credible.

We find the cases cited by appellant are distinguishable[1] and the point requires no further comment.

---

1. In Hastings v. Murray, 112 Vt. 37, 20 A.2d 107 (1941), the issue was whether the defendant was grossly negligent under the Vermont automobile guest statute. The court concluded that the evidence as a whole was insufficient to establish culpability under the statutory standard. In Widham v. Town of Brattleboro, 105 Vt. 210, 166 A. 22 (1933), the plaintiff did not dispute evidence of

The Hardgrove claim that there was no competent evidence to support a recovery of future dental expenses for repair work to Mrs. Gregory's fractured jaw must also be rejected. This point was presented by a motion to strike certain testimony by Dr. Massucco and by certain requests for instructions that were refused.

When Mrs. Gregory reached the hospital, it was found that the entire side of her face was so torn and gaping that the operating surgeon was able to put the various pieces of her fractured jaw together without going into her mouth. One piece of jawbone fell out on the operating table and this was drilled and fitted into place. The contiguous pieces of fractured jaw on both sides of this piece of bone that had dropped out were fastened together with several stainless steel wires. During the ensuing weeks Mrs. Gregory had to be fed by a tube. She could not open or close her mouth. Later some of the wires were removed, but at the time of the trial she still could not open and shut her mouth in a normal manner.

Dr. Lawrence P. Massucco examined Mrs. Gregory and described in detail the condition of her teeth and jaw, supplementing his testimony with a reading of the X-rays taken shortly after the accident. He said the wires that were still in place "now serve their purpose no longer adequately" because of the shifting of the teeth, the lack of proper alignment, the difficulty of cleaning the teeth properly and so on. He described in simple, clear terms the dental work that would be necessary to remedy the unsatisfactory condition and gave his opinion of what the cost of this dental work would be. All this without any objection on the part of counsel for Hardgrove. No reasonable person, we think, having heard the testimony of Mrs. Gregory and of Dr. Leonard R. Johnston, who performed the difficult

operation immediately after the accident, could have had any doubt whatever of the fact that the condition described by Dr. Massucco and the future dental work he said the circumstances required were due solely to the accident which the jury found was caused by the fault of appellant Hardgrove.

This brings us to the cross-examination of Dr. Massucco. Counsel asked the following questions and received the following answers:

Q. Doctor, are you able to state conclusively that all of the future dental work that you have told us about here today was necessitated by the accident, or, can you tell us what portion was necessitated by the accident, and what portion was necessitated by the condition of Mrs. Gregory's mouth prior to the accident? A. I absolutely could not tell you that.

Q. So actually,— A. All I can tell you is the mouth as I see it today, and what is needed. As to what caused it, that is beyond me. I don't know whether she lost these teeth through decay, or whether they were out of line and removed or got them knocked out in the accident has no bearing on my diagnosis of what her mouth is today and what she needs today, regardless of how she arrived at this condition. I don't particularly care. All I know is what this young lady, at 22, needs at the present time to put this mouth in shape, if this were my patient, which she is not.

Q. So doctor, you can't state with reasonable medical probability that the future work that she may require is a result of the accident injury which she sustained on May 21, 1966? A. Absolutely, I could not.

These answers, together with Dr. Massucco's testimony that he had no knowledge of the number of teeth, if any, Mrs. Gregory had lost prior to the acci-

---

physical facts which, if conceded, could lead a reasonable jury to but one conclusion on the issue of contributory negligence. In the instant case Mrs. Greg-

ory's own testimony and other evidence did dispute the interpretation of the photograph given by Officer Robinson.

dent and whether or not she had worn some prosthetic appliance prior to the accident, are supposed to prove that Dr. Massucco's testimony is of no probative value and should have been stricken. This is absurd.

The number of teeth, if any, lost prior to the accident had no real bearing on the smashing of her jaw into fragments and the placing of the wires that Dr. Massucco said no longer served their purpose. What Dr. Massucco was trying to say, and what he did say, is that he knew nothing about the accident but he did know the condition of Mrs. Gregory's teeth at the time of the trial and what it was necessary to do to rectify, as far as it was possible to do so, the condition of her teeth as he described it.

■ It would be sufficient to dispose of appellant Hardgrove's contention that the supporting medical proof is insufficient to point out that here Dr. Massucco's medical proof amply supports a recovery for future pain and suffering and future medical or dental expense. This is not to say, however, that Vermont law does not require, in cases such as those cited in Rheaume v. Patterson, 289 F.2d 611, 613 (2d Cir. 1961) where the fact and nature of the injury are obscure, proper medical proof to eliminate the possibility of mere conjecture, guesswork, or speculation. For example, in Burton v. Holden & Martin Lumber Co., 112 Vt. 17, 20 A.2d 99, 135 A.L.R. 512 (1941) a doctor had testified that a sliver of wood in decedent's thumb "could have been a possible contributing cause of his death from cerebral thrombosis" and this was held to be insufficient. The reasoning of the Vermont court was (112 Vt. at 19–20, 20 A.2d at 100):

> There are many cases where the facts proved are such that any layman of average intelligence would know, from his own knowledge and experience, that the injuries were the cause of death. In such a case the requirements of law are met without expert testimony. State v. Rounds, 104 Vt. 442, 456, 160 A. 249. But where, as here, the physical processes terminating in death are obscure and abstruse, and concerning which a layman can have no well-founded knowledge and can do no more than indulge in mere speculation, there is no proper foundation for a finding by the trier without expert medical testimony. Ryder v. Vermont Last Block Co., 91 Vt. 158, 167, 99 A. 733; LeClair v. Montpelier & Wells River R. R., 93 Vt. 92, 97, 106 A. 587; State v. Rounds, supra; Howley v. Kantor, 105 Vt. 128, 133, 163 A. 628; Laird v. State of Vermont Highway Dept., 110 Vt. 195, 199, 3 A.2d 552.

> The mere fact that the infection in decedent's thumb resulting from the sliver could have been a possible contributing cause of his death, does not alone warrant a finding that it was. Wellman, Adm'r v. Wales, 98 Vt. 437, 440, 129 A. 317; Dooley v. Economy Store, Inc., 109 Vt. 138, 142, 194 A. 375. There must be created in the mind of the trier something more than a possibility, suspicion or surmise that such was the cause, and the inference from the facts proved must be at least the more probable hypothesis, with reference to the possibility of other hypotheses.

See also Hebert v. Stanley, 124 Vt. 205, 201 A.2d 698 (1964); Howley v. Kantor, 105 Vt. 128, 163 A. 628 (1933); Ryder v. Vermont Last Block Co., 91 Vt. 158, 99 A. 733 (1917).

Here the fact and the nature of the damage to Mrs. Gregory's teeth and jaw are perfectly clear. And it is equally clear that, accepting the testimony of Dr. Johnston and Mrs. Gregory, supplemented by the testimony of Dr. Massucco, the cost of future dental work of a painful and expensive character was a proper element of damage to be considered by the jury. The motions to strike and the requests for instructions eliminating this element of damage were properly denied.

■ One of the witnesses for the Gregorys who lived near the scene of the accident testified to an experiment he conducted to demonstrate the relative

positions of cars on either side of the hill when the driver of each could first see the other. This was without reference to the speed of either car but it took into consideration the grade, as the slope of the hill was not the same on one side as on the other. The ruling admitting this evidence over objection is assigned as prejudicial error.

The claim, as set forth in appellant Hardgrove's brief, is that the conditions of the road were not the same at the time of the experiment as they were at the time of the accident. Of course, if the height of the road had been changed this would seriously affect the probative value of the experiment. The proof, however, is that the height of the road was not changed but the road was widened about a foot and one-half. So, even if counsel for appellant Hardgrove had objected on the ground that the surface of the road had been changed, the objection would have been unavailing. But he did not object on that ground. The entire colloquy is as follows:

Mr. Coffrin: Well, Your Honor, I'm going to object to this.

The Court: What's your objection, Mr. Coffrin?

Mr. Coffrin: I don't think that the subject has yet sufficient foundation as far as ability of this witness to compare something that he did today in these conditions and something that may have been done in May of 1966.

The Court: What conditions are there except for width of the road?

Mr. Coffrin: I don't know about snow.

The Court: Well, possibly you can clarify about the snow conditions.

Mr. Coffrin: Well,—

The witness then testified that the snow on the surface of the road when he made the experiment would not in any way affect the experiment. This was evidently because the snow on the road had been cleared and pushed up in banks on either side of the road.

Affirmed.