SHIRLEY ELLISON, b.n.f. *v.* EARL COLBY.

May Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1939.

432

*Loren R. Pierce* for the defendant.

*Daniel Kesman* and *Asa S. Bloomer* for the plaintiff.

BUTTLES, J. In this tort action the plaintiff seeks damages for personal injuries suffered by her in an automobile accident which occurred at the easterly end of a bridge situated about two miles westerly from Chester on the road to Rawsonville via Simonsville, at about 1:30 a.m. on October 10, 1938. The plaintiff was a guest passenger in the two-seated 1929 Buick sedan driven and controlled by the defendant. The car weighed about

4,235 pounds. There were three persons on the front seat, the plaintiff being in the middle. The rear seat was unoccupied. The defendant had driven over the same route in the opposite direction early in the evening, with the same passengers, leaving Chester at 6:30 to 7:00 p.m. and arriving at this bridge after it was so dark that the lights of the car had been turned on. The injuries of which the plaintiff complains resulted from the car's leaving the road, on the return trip, and going down an embankment at a point a few feet easterly of the bridge. Trial was by jury resulting in verdict and judgment for the plaintiff, and the case comes to this Court on defendant's exceptions.

Exceptions taken to the overruling of defendant's motions for a directed verdict and to his motion to set aside the verdict as being contrary to the law as given to the jury by the court's instructions are briefed together and are based upon the claim that the plaintiff failed to prove gross negligence. Such proof was of course necessary, since it is admittedly a case coming within the provisions of P. L. 5113, and only gross negligence is alleged by the plaintiff in her declaration.

From the evidence taken in the light most favorable for the plaintiff, it appears that the distance from Chester to the scene of the accident is about two miles, and from there to Simonsville is about four miles. Most of the road from Chester to Simonsville was under construction and repair. Every bridge on the road, of which there were several, was washed out at one end or the other. The defendant had been over that road possibly four times in his life, but he was familiar with the situation in that section and realized when he got down there that there had been a flood and that the road was under construction and repair. The party had been obliged to detour a part of the way going over and returning because of the bad condition of the road left by the flood.

There had been a big washout at the east end of the bridge where the accident occurred. It was ten to seventeen feet deep at the end of the bridge and extended forty to sixty rods from the bridge at a decreasing depth. This had been repaired by filling in with soft dirt or sand over which a roadway about nine feet wide had been passable for four or five days. The traveled portion of this roadway had been packed reasonably hard by the dual wheels of the trucks which had dumped in the sand. There

was nothing to prevent cars from going off the sides of the fill at the approach to the bridge except a bank or ridge of the material used for fill which had been pushed up on each side. This ridge or bank was about two feet high by three feet wide at the place of the accident. The traveled roadway extended from about the middle of the bridge, so that if a car was driven to the right of the middle of the bridge the right wheels would not enter the roadway but would strike into the soft material at the side. There was "something of a curve" to the left in the road at the easterly end of the bridge. Between this bridge and the next one to the west, perhaps one fourth of a mile distant, the road was hard-surfaced or black top. There were no washouts in this strip of road and there was a white line in the middle for several rods westerly from the bridge where the accident happened.

There were flares on the road, one of which was east of the bridge near the easterly end of the washout. There was no evidence of flares west of the bridge nearer than Bemis' bridge about two miles away. There was evidence that there were danger signals at both ends "down away from the bridge, below it, so as to give anyone ample chance."

After the defendant's car crossed the bridge the right wheels struck the soft dirt. The car swerved to the right and going into the ridge or bank of sand plowed off the highest part of it for a distance of twelve or fifteen feet, then went down the embankment and tipped over onto its top, landing about forty-three feet from where it broke through the ridge. The damage to the car was slight, the windshield and one door glass being broken, the hood jammed and the top "punched full of holes." The driver had been cautioned to slow down once or twice on the way over by the other passenger but not by the plaintiff, who thought this cautioning sufficient. She had no fault to find with his driving until they came to the black top road between the bridges on the return trip. He then increased his speed, according to the testimony of the plaintiff, to around a rate of fifty miles per hour and maintained that speed upon and across the bridge. She was eighteen years old, had not had much experience in driving and never had a driver's license. It does not appear that she observed the speedometer. The defendant and one other wit-

ness fixed the speed just before the accident at thirty to thirty-five miles per hour.

 It is, of course, true that we cannot ignore the physical facts that are before us, and though a witness testifies that a thing is so his testimony will not be given credence when indisputable evidence to the contrary is before the court. *Wellman, Admr.* v. *Wales,* 98 Vt. 437, 443, 129 Atl. 317; *Widham* v. *Town of Brattleboro,* 105 Vt. 210, 214, 166 Atl. 22; *Jasmin* v. *Parker et al.,* 102 Vt. 405, 410, 148 Atl. 874. But we do not think there is here indisputable evidence opposing the plaintiff's testimony as to the speed of the car, or that the jury's giving credence to her testimony was precluded by the physical facts that were before them. We cannot say that under the circumstances here disclosed by the evidence the defendant's car would necessarily have gone farther or suffered more damage after leaving the roadway if the plaintiff's testimony was correct as to speed.

 Gross negligence has been defined in *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 531, 162 Atl. 373, 86 A. L. R. 1139, and in *Dessereau* v. *Walker,* 105 Vt. 99, 101, 163 Atl. 632, and that definition need not be here repeated. The matters with respect to which the defendant is claimed to have been grossly negligent are speed and lack of proper control of the car. This Court has recently said that there is no concrete rule by which the existence of gross negligence can be determined, for each case must be judged according to its own facts. *Powers* v. *Lackey,* 109 Vt. 505, 506, 1 Atl. (2d) 693; *Hall* v. *Royce,* 109 Vt. 99, 104, 192 Atl. 193; *Rich* v. *Hall,* 107 Vt. 455, 459, 181 Atl. 113. When the question arises upon the defendant's motion for directed verdict in an action based upon the provisions of P. L. 5113 the test is whether his conduct in the given situation was such that it can reasonably be inferred that it was the result of an indifference to his duty to his guest or an utter forgetfulness of the latter's safety. *Powers* v. *Lackey, supra, Franzoni* v. *Ravenna,* 105 Vt. 64, 66, 163 Atl. 564, *Anderson* v. *Olson,* 106 Vt. 70, 72, 169 Atl. 781. It is true that the danger which here existed was increased by the fact that the right wheels of a car driving off the bridge were bound to enter the soft material if it kept to the right of the center of the roadway and the further fact that there were no flares at the place of danger or nearer than we have indicated and so far as appears no other signs or signals visible to a driver

approaching from the west in the nighttime. But the accident occurred within two or three weeks after the disastrous hurricane and flood of September, 1938, and it was common knowledge that many roads throughout the state had been badly damaged. The defendant had passed over this bridge and this road earlier the same evening. He admits knowing about the condition of the road and that there were a number of places where fills had been made and temporary roadways put in. His car is presumed to have been equipped with legal lights and adequate brakes. Under these circumstances and others disclosed by the evidence it was competent for the jury to infer that the act of the defendant in crossing the bridge and driving upon the fill at a speed of around fifty miles per hour was not due to momentary inattention, error in judgment or loss of presence of mind, but was a failure to exercise even a slight degree of care and was the result of an indifference to his duty to his guests or an utter forgetfulness of the latters' safety.

On cross-examination the witness Rossier was asked by defendant's counsel: "Do you know if any steps were taken immediately thereafter to put flares at the east and west approaches of this bridge, or at a suitable distance therefrom?" The question was objected to as calling for hearsay testimony and was properly excluded. The witness had testified to making an examination of the place of the accident on the day following the night that it took place and seeing no flares on that occasion. So far as appeared he had had no other opportunity to know anything about the placing of flares.

The witness Pollard, on cross-examination, was allowed, over defendant's objection and exception, to answer this question: "That would be a reckless and utter disregard of his own safety wouldn't it?" Whatever error there was in the ruling of the court on this objection was obviously harmless since virtually the same testimony was given by the witness without objection or exception in answer to the next question, which was "and the safety of his passenger, anyone that was riding with him, that is right is it not?" *Stoddard & Sons* v. *Village of North Troy,* 102 Vt. 462, 467, 150 Atl. 148; *People's National Bank* v. *Brunelle,* 101 Vt. 42, 47, 140 Atl. 160.

Defendant relies on an exception taken in these words to argument of counsel: "Defendant asks for an excep-

tion to Mr. Bloomer's argument that she will be impaired for forty-two years extent. Their own witness, the doctor said this probably would all be cleared up in two years." The objection does not point out the language deemed improper, nor state specifically the ground of the objection as is requisite to make the exception available. *Usher* v. *Severance*, 86 Vt. 523, 531, 86 Atl. 741. Moreover, the transcript discloses that there was expert medical testimony in the case tending to show permanent impairment. We have considered all of the exceptions briefed by the defendant and find no error. *Judgment affirmed.*