BENJAMIN BARROWS, B. N. F. *v.* HOMER E. POWELL ET AL.

November Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 5, 1943.

*Austin & Edmunds* for the defendant.

*Sylvester & Ready* for the plaintiff.

JEFFORDS, J. Late in the afternoon of October 20, 1941, defendant Powell was driving south from St. Albans on U. S. route 7. The plaintiff was riding in his car as a guest passenger. At a point a few miles south of that city the car was in collision with one travelling in the opposite direction and then being operated by Delphis F. Murray. The plaintiff was injured and brought suit against both Powell and Murray. At the trial there was a verdict and judgment against both defendants. Defendant Powell only, hereinafter referred to as the defendant, brings his exceptions to this Court. One on which he relies is to the denial of the lower Court of his motion for a directed verdict, based on the ground that there is no evidence in the case to justify the jury in finding that this defendant was guilty of gross negligence.

A reading of the transcript discloses some facts which are not disputed but it also shows many material facts concerning which there is conflict. Those about which there is no dispute are as follows: The accident happened shortly before six o'clock when it was so dark that the lights of both cars were on and the collision occurred about in the center of the road which was of standard width and dry. The road was nearly straight so that each driver had a clear vision of the lights of the other car when the two were at least 1000 feet apart. As the cars approached each other both were going about 40 miles per hour, that of the defendant descending a slight grade. The accident happened a few feet south of a culvert and the point of contact was the right front of each car. Both cars at the time of collision were to their left of the center of the road.

The evidence as to the position of the two cars in the road, with reference to its center line, as they approached each other and the actions of the respective operators is much in conflict. The defendant testified that when he first noticed the lights of the other car it was about 800 feet away. That when it was about 300 feet distant he noticed it was on its wrong side of the road. He continued along on his side until the cars were about 150 feet apart when he applied his brakes and turned to his left going from 60 to 80 feet before the collision, about 50% of which distance was on his left hand side of the road. Witness Floyd Barrows testified that this defendant had told him after the accident that "it all happened so quick that he didn't know just what was the cause of it or how it

happened". Powell's version of this conversation was that he said he couldn't tell exactly what Murray did. "I didn't know just how he came into me. That was the part about which it happened so quickly. * * * I didn't know just how he came into me." The defendant's testimony tending to show, as he claims, that because of various conditions and circumstances then existing he acted as a prudent person or at least without gross negligence in turning when and as he admits he did becomes immaterial in view of the construction that we place on the evidence as later on set forth.

Merrill Gove who was driving a car that had been following the defendant's for some distance and was between three and four hundred feet back of it at the time of the collision corroborated this defendant's testimony to the effect that he was driving on his side of the road as the two cars approached and that the other car turned·to its left before the defendant did. He also testified that the defendant's car did not go from one side of the road to the other before the accident and that when it did turn it was pulled abruptly to its left. Gove estimated that the Murray car was from 125 to 150 feet from the defendant's car when the former went across to the defendant's side and that its turn was very gradual.

Raymond Williams who was riding on the front seat of the Gove car testified that he saw the Murray car when it was about 1000 feet away from the defendant's and that it was then on its wrong side of the road. He stated that the defendant pulled sharply from his right hand side of the road to the left when the two cars were from 125 to 150 feet apart.

The testimony of Gardner Stearns another passenger in the Gove car is rather confusing. The substance of it, taken in the light most favorable to the plaintiff, is that the defendant pulled his car gradually to its left to avoid the accident when his car and the Murray car were about 1000 feet apart and continued along with the defendant's car about one half over the center line until the collision. Stearns saw the Murray car for the first time when the defendant started to pull to his left and Murray was then on his wrong side of the road and pulled sharply to his right just before the collision. This witness apparently felt that he had created a wrong impression by his testimony as to the distance the defendant's car proceeded to its left of the center of the road before the collision but it is not at all plain just what part, if any, of his

prior testimony he intended to correct and consequently it was for the jury to determine which of his statements were to be accepted as true. *Wakefield* v. *Champlain Marine Co.*, 111 Vt 243, 244, 13 A2d 183; *Piper* v. *Oakland Motor Co.*, 94 Vt 211, 213, 109 A 911.

The testimony of Murray is extremely confusing and conflicting but taken most favorably to the plaintiff it is, in effect, that he was proceeding along on his right side of the road at about 40 miles per hour when he noticed the defendant's car approaching about 800 feet away. According to this witness when the Powell car was 300 or 400 feet away it started to weave from one side of the road to the other doing this a few times, it might be 2 or 3, not going way over to the left until it was about 100 feet away. The weaving did not cause Murray to turn to his left but this was caused by the final turning of the defendant's car to its left. At that time Murray was on his side of the road. He then let up on the gas and knowing that there was to be a collision he pulled his car to an open space in the road to his left. Murray testified that defendant "pulled back to his right about the same time I pulled to the left, I think" and denied that he (Murray) pulled back to his right after he had turned to the left.

The plaintiff who was rendered unconscious from contact with the windshield was unable to tell anything about the cause of the accident.

█ If Murray's testimony could have been reasonably believed by the jury there can be no question but that they would have been warranted in finding the defendant guilty of gross negligence under the provisions of P. L. 5113 as defined in *Shaw, Admr.* v. *Moore,* 104 Vt 529, 531, 162 A 373, 86 ALR 1139; *Sorrell* v. *White,* 103 Vt 277, 282, 153 A 359, and numerous other later decisions of this Court. The weaving of defendant's car in the road and the final pulling over into Murray's lane of travel would fully warrant the jury in finding that here was no momentary inattention, error in judgment or loss of presence of mind, but a deliberate act and the failure to exercise a slight degree of care and was the result of an indifference to his duty to his guest or an utter forgetfulness of the latter's safety, such as characterises gross negligence. *Ellison* v. *Colby,* 110 Vt 431, 436, 437, 8 A2d 637; *Powers* v. *Lackey,* 109 Vt 505, 1 A2d 693.

The defendant does not seriously question that if Murray's

testimony can stand for consideration a jury question was presented as to the liability of the former. He contends, however, that this testimony is inconsistent with undisputed physical facts shown by the record and consequently must be disregarded and the evidence tending to show that the accident happened as claimed by the defendant left as the only substantial evidence on this point. In support of this contention he relies on *Hastings* v. *Murray*, 112 Vt 37, 20 A2d 107.

The physical facts referred to are skid marks made by the tires on defendant's car. E. A. Alexander, a motor vehicle inspector, who arrived at the scene of the accident before the cars had been moved, testified that the front of the defendant's car was in the center of the road with the rear on the east side toward the guard rail; that there was a mark which might have been made partly by the application of brakes and partly by pulling the Powell car to the left leading to the west or defendant's side of the road back 78 feet from the point of contact which was in the center of the highway; that the mark indicated Powell had made a "pretty fairly sharp turn" to his left. James Willis testified that the mark was plainly visible and extended back north from the Powell car about 75 feet and in his opinion was caused by the application of brakes. Gove stated that the right hand tire marks of defendant's car were over nearly on the center line of the road leading back for some distance to where the left hand tire marks were to the right of the center.

The only other witness who testified as to the skid mark was Alfred Warren who also arrived on the scene apparently before the cars had been moved. According to him the defendant's car was way over on its left hand side of the road and the other car was just beyond the center on its left side of the highway. He estimated that the skid mark extended back northerly between 70 and 80 feet from the defendant's car and assuming that his estimate of 80 feet was correct it was his opinion that the car crossed the road 70 feet north of where it stopped or, in other words, that 70 of the 80 feet were to Powell's left of the center of the road. This witness was asked: "The car (Powell's) never went any distance straight down the road on the left side?" His answer was in part: "I would say that it went pretty close to the left hand all the way down, that is, pretty straight." From this answer the jury could reasonably infer that the turn made by the defendant was not

sharp but gradual. This witness also testified that he saw a skid mark extending a foot or two directly behind the wheel of the Murray car extending in the same angle as that car was headed.

■■ The gist of the defendant's contention is that the skid mark of his tires shows conclusively that his car was such a distance north of Murray's when he, Powell, turned to his left that Murray's testimony as to the weaving and turning by Powell within the short distance then separating the two cars, as given by that witness, and his testimony of his own turning within such distance, cannot be given credence. One trouble with the defendant's position is that it is predicated upon evidence that makes most strongly against the plaintiff rather than on that which is most favorable to him as the defendant recites, and relies on, in his brief, certain testimony of Murray placing the distance between the two cars, when, according to Murray, such weaving and turning took place, much shorter than other testimony of that witness would have warranted the jury in finding the true facts to be in this respect. But another and vital weakness in respect to defendant's contention as to the skid mark results from the conflict in the evidence in regard to the same. In order to have certain oral testimony held entitled to no credence because of the existence of a physical fact it must appear that such fact denies the existence of the truth of such testimony beyond dispute. *Wellman, Admr.* v. *Wales,* 98 Vt 437, 443, 129 A 317, and cases herein next referred to. It follows that when there is dispute concerning such fact which goes to the very essence of the question in issue then the physical fact can no longer be considered as indisputable evidence contrary to the oral evidence on that question. The vital question in issue here is whether Powell turned to his left across the center line before Murray turned to his left. Murray says that the defendant did. Powell claims, as already indicated, that the skid mark shows he was so much farther north of Murray when he, Powell, made his turn, than Murray testifies was the distance between the two cars at the time, that the latter's testimony that Powell turned first across the center line must be disbelieved. In order for the skid mark to have this effect the place where it crossed the center line must be undisputed. Such is not the fact here. The only material fact concerning this mark which is undisputed is that it started somewhere on defendant's right hand side of the road and ex-

tended at least to the center. Its starting course, whether parallel with the center line or at an angle to it is not clearly shown. From the testimony of witness Alexander it could reasonably be inferred that practically all of the mark was to the west of the center while the opposite could as well be found from the testimony of Warren. Thus the fact of the distance apart of the two cars when Powell made his turn across the center line is not conclusively established by the skid mark and becomes merely a matter of argument. It is not questioned that the collision took place at about the center of the highway. Consequently the jury could reasonably have found from the conflicting testimony of Alexander and Warren and other evidence in the case that the turn was made at some distance between ten and seventy-eight feet north of the point of collision. If they believed Murray's testimony that the two cars were about 100 feet apart when Powell made his turn they could also believe the former's testimony that the defendant turned first as the skid mark, for the reasons given, would not have rendered impossible this latter evidence. Other conflicts in the testimony relating directly or indirectly to this mark which tend to destroy its value in the respect claimed for it by the defendant by making doubtful the position of the two cars just before the turnings were made and the angle of the same need not again be set forth as they are all apparent in our review of the evidence. It should also be noted that the rates of speed are approximate as well as other figures appearing in the testimony affording some latitude to the jury in their consideration of the evidence on this point.

The defendant contends that we must eliminate the testimony of Warren as to the skid mark behind the Murray car as corroborating evidence of Murray's testimony as to his turning on the theory that we should take judicial notice that a car proceeding along a cement road at 40 miles per hour in making a sharp turn will leave a skid mark in much the same manner as that testified to by Inspector Alexander in regard to the mark made by the Powell car. So many uncertain factors are present that it cannot be said it is a matter of common knowledge or certainty that such similar result in the turning of two cars will always be obtained and consequently the holding contended for by the defendant is not warranted. Such factors, to name but a few, are the difference in the weight of the cars, the angle of turning, the condition of the

brakes and the amount of force applied to them and the kind and condition of the road surface.

The present case is similar to others wherein we have held, for reasons much like those here appearing, that the physical facts relied upon did not constitute indisputable evidence in opposition to oral evidence of a witness on a certain point and that such oral evidence made a question for the jury on that issue, it not being impossible. *Izor* v. *Brigham,* 111 Vt 438, 442, 17 A2d 236; *Ellison* v. *Colby,* 110 Vt 431, 436, 8 A2d 637; *Jasmin* v. *Parker,* 102 Vt 405, 413, 148 A 874; *Parker, Adm.* v. *Smith,* 100 Vt 130, 134, 135 A 495.

The case of *Hastings* v. *Murray, supra,* relied upon by the defendant is easily distinguished. In that case there was no dispute concerning the skid mark in so far as its connection with or bearing on the question in issue was concerned. It indisputably showed that the oral testimony of the witness was impossible of being the true fact.

There was no error in refusing to grant the motion of defendant Powell for a directed verdict.

█ This defendant also relies on exceptions taken to the exclusion of certain testimony. No offer was made showing what the answer would be to either of the questions, so for this reason, if for none other, the exceptions are unavailing. *Smith* v. *Reynolds,* 94 Vt 28, 40, 108 A 697; *State* v. *Noakes,* 70 Vt 247, 256, 40 A 249; *Fuller* v. *Valiquette,* 70 Vt 502, 41 A 579. It may be that the trial court based its rulings upon other grounds, but we may sustain the rulings upon any legal grounds. *Meyette* v. *Canadian Pac. Ry. Co.,* 110 Vt 345, 355, 6 A2d 33.

*Judgment affirmed.*