## MOISAN v. LOFTUS et al.
### No. 37, Docket 21402.

United States Court of Appeals. Second Circuit.

Argued Nov. 1, 1949.

Decided Dec. 1, 1949.

Philip J. Murphy, Worcester, Mass., Allin, Riggs and Shaughnessy, New York City, for appellant.

Frederick W. Wakefield, Jr., Burlington, Vt., for appellees.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

L. HAND, Chief Judge.

The plaintiff appeals from a judgment, entered upon a directed verdict in an action to recover for personal injuries resulting from the "gross" negligence of one of the defendants, Robert F. Loftus, the driver of a motor truck, in which the plaintiff was riding. (The judgment in favor of the other defendant, Frederick W. Loftus, is conceded to have been right.) On the evening of April 9, 1948, the defendant, Robert F. Loftus, invited the plaintiff to drive with him from Burlington, Vermount, to St. Albans in a truck, belonging to Robert's father, Frederick Loftus. The accident happened near midnight on a road, leading north from Burlington, at a point where the highway was close to Lake Champlain, whose waters for some unexplained reason had overflowed the road and frozen. The truck skidded on the frozen patch, left the road and injured the plaintiff. As a "guest" passenger he cannot recover unless he proved that the acci-

dent was "caused by the gross or wilful negligence of the operator."[1] Taking the evidence most favorable to him on that issue, the facts, which a jury might have found, were as follows. After crossing a culvert or bridge the highway going north curved gently to the right, after which it ran unobstructed to the place of the accident. Loftus, the driver, who had been over the road once before, increased his speed to over fifty miles after he had passed the bridge, and put his headlights on "low beam, notwithstanding there were no other vehicles or vehicle lights in sight." The night was cold and windy and the temperature "very close to freezing," although it did not appear how cold it had been during the day. Loftus saw the patch of ice when he was only 200 or 300 feet away, and mistook it for water until the truck was upon it, when he applied his brakes hard, which made the truck skid for about 125 feet, strike a tree and upset. The only question we need decide is whether there was enough evidence of "gross" negligence to support a verdict. The judge thought not, and directed a verdict for the driver.

The Supreme Court of Vermont has several times accepted as the authoritative definition of "gross" negligence what was said in Shaw v. Moore,[2] which the Supreme Court of the United States quoted in Conway v. O'Brien.[3] In a recent case, which on the facts most nearly approaches the case at bar, the Vermont court again referred to this definition,[4] and to a similar one in Dessereau v. Walker[5] as one which "need not be here repeated." The difficulties are in applying the rule, as the Supreme Court observed in Conway v. O'Brien, supra;[3] they arise from the necessity of applying a quantitative test to an incommensurable subject-matter; and the same difficulties inhere in the concept of "ordinary" negligence. It is indeed possible to state an equation for negligence in the form, $C = P \times D$, in which the C is the care required to avoid risk, D, the possible injuries, and P, the probability that the injuries will occur, if the requisite care is not taken. But of these factors care is the only one ever susceptible of quantitative estimate, and often that is not. The injuries are always a variable within limits, which do not admit of even approximate ascertainment; and, although probability might theoretically be estimated, if any statistics were available, they never are; and, besides, probability varies with the severity of the injuries. It follows that all such attempts are illusory, and, if serviceable at all, are so only to center attention upon which one of the factors may be determinative in any given situation. It assists us here to center on the factor of probability, because the difference between "gross" and "ordinary" negligence consists in the higher risks which the putatively wrongful conduct has imposed upon the injured person. The requisite care to avoid the injuries and the possible injuries themselves are the same.

Confining ourselves therefore to the factor of probability, it appears to us that the chance that the truck would leave the road that night was slight. We will assume that a jury might find it negligent to drive at over fifty miles an hour in the night even on a straight road on which there was nothing ahead; it is always possible that the way may not be as open as it appears, and lights in "low beam" of course cut down the distance one can see ahead. Nevertheless if that be negligence, it is negligence of which most drivers, and especially skilled drivers, are often guilty. The speed has become nearly the standard on straight stretches of road in the daytime, and confident drivers do not hesitate to reach it at night. The time was early April when hard frosts have become uncommon, and the testimony went no further than to say that the temperature was "very

1. Vermont Statutes, Revision of 1947, Title 47, Chap. 434, § 10,223.

2. 104 Vt. 529, 531–532, 162 A. 373, 86 A. L.R. 1139.

3. 312 U.S. 492, 495, 61 S.Ct. 634, 85 L.Ed. 969.

4. Ellison v. Colby, 110 Vt. 431, 8 A.2d 637, 640.

5. 105 Vt. 99, 101, 163 A. 632.

close to the freezing point." Even if it was careless—which we question—not to apprehend that what looked like water might be frozen, it was at least not reckless to think that it would be water. The most that we can see in the evidence is the kind of carelessness which all of us fall into every day, and which does not condemn those guilty of it in the somewhat rhetorically condemnatory terms of the accepted definition.

The situation in the case on which the plaintiff relies, and must rely,[6] was quite different. The driver had been over the road just before and knew that, as he left a bridge, he must keep to the ruts made in newly dumped sand, thrown on the road to fill in a washout. The road made "something of a curve" to the left as it left the bridge and the fill was so high that if a car went over, it would plunge down ten to seventeen feet, as in fact the car in question did. When the driver emerged from the east end of the bridge at night at a speed of fifty miles, his right wheel missed the rut which had been tamped down by former wheels, and was caught in the sand. Nothing will put a car out of control more quickly than to run into sand at high speed; it was as though the right wheel were seized hold of and checked. All this the driver knew, and the danger of the situation should have been further impressed upon him by a flare set near the easterly end of the washout.

In conclusion we cannot help observing that, not only are the inherent uncertainties great in applying such a formula, but that they are greater for the court of another jurisdiction, which cannot have the assurance that comes to those who have themselves framed the terms which they later construe. When we compare the situation which was "gross" negligence in Conway v. O'Brien, supra,[7] with that at bar, we are aware that the factor of probability in each may conceivably be regarded as not far apart; all we can say is that the difference does seem to be enough to put the two cases

in separate classes. Perhaps that is all that is ever possible to say in such cases.

The second point concerns the exclusion of evidence, but since the evidence if admitted could have had no effect upon the result, we need not decide it.

Judgment affirmed.

---

6. Ellison v. Colby, supra, 110 Vt. 431, 8 A.2d 637.

7. 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969.