NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 4

No. 2021-096

| | |
|---|---|
| Town of Pawlet | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, |
| | Environmental Division |
| | |
| Daniel Banyai | September Term, 2021 |

Thomas S. Durkin, J.

Merrill E. Bent of Woolmington, Campbell, Bent & Stasny, P.C., Manchester Center, for
 Plaintiff-Appellee.

Cindy E. Hill of Hill Attorney PLLC, Middlebury, for Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson,[1] Eaton, and Carroll, JJ., and Dooley, J. (Ret.),
 Specially Assigned


¶ 1. **EATON, J.** This enforcement action stems from a dispute between landowner Daniel Banyai and the Town of Pawlet over alleged zoning violations related to the construction of a firearms training facility on landowner's property. Landowner appeals an Environmental Division decision upholding a notice of violation, granting a permanent injunction, and assessing $46,600 in fines, arguing that he had a valid permit, certain exhibits were improperly admitted at the merits hearing, and the fines were excessive. We affirm.

---

[1] Justice Robinson was present for oral argument but did not participate in this decision.

## I. Factual and Procedural History

¶ 2.    We begin with an overview of the factual and procedural history.  In 2013, landowner purchased an undeveloped tract of land in West Pawlet, Vermont.  The roughly thirty-acre property had a deeded thirty-foot right-of-way over neighboring property.  The Town of Pawlet has Unified Zoning Bylaws, which contain two particularly relevant provisions.  First, the Bylaws require a fifty-foot-wide right-of-way for property undergoing development.  Town of Pawlet Unified Bylaws 66, ¶ 9 (2017), https://pawlet.vt.gov/wp-content/uploads/2009/01/Pawlet_Unified-Bylaws-adopted-2017.pdf [https://perma.cc/THB4-J2AA] [hereinafter Bylaws]; id. art. V, § 4.  Second, the Bylaws require a property owner to obtain a permit before commencing a new construction project or changing a property's use.  Id. art. VIII, § 2 ("No building construction or land development may commence and no land or structure may be devoted to a new or changed use within the municipality without a zoning permit duly issued by the Zoning Administrator in accordance with Section 4449 of the Act.").

¶ 3.    In late 2017, landowner began operating a firearms training facility on the property.  His facility includes, at minimum, a 500-square-foot structure and two outdoor shooting ranges, one of which has covered shooting benches.  In December 2017, landowner filed a permit application with the Town's zoning administrator, requesting approval for a "school" structure and change of use of the property from "land" to "school."  In January 2018, the zoning administrator denied the application (January 2018 Permit Denial) because the property's thirty-foot right-of-way was not in compliance with the fifty-foot right-of-way requirement.  Landowner did not appeal the January 2018 Permit Denial.

¶ 4.    In April 2018, landowner sent the Town of Pawlet Development Review Board (DRB) a letter titled "Reference: Zoning Appeal."  This letter sought a variance for landowner's

2

thirty-foot right-of-way, aiming to address the reason for the January 2018 Permit Denial.[2]  On April 25, 2018, the DRB held a hearing on landowner's variance application and concluded the property was a preexisting nonconformity that did not require a variance.  Neighbors, whose property borders landowner's right-of-way, timely appealed the DRB's variance decision to the Environmental Division.

¶ 5.  While the variance appeal was pending, the zoning administrator issued landowner a notice of violation in May 2018 (NOV1).  NOV1 stated landowner was in violation of the bylaw requiring a permit prior to construction or land development because he had "a building and land use without an approved permit."  Bylaws art. VIII, § 2.  It gave landowner seven days to fix the violation and invited him to do so by submitting a permit application.  In response to NOV1, landowner submitted a permit application in June 2018, for a "school building" structure and new use of the property as "school/training."  The same day, the zoning administrator approved this application and granted landowner a permit (June 2018 Permit).[3]  In October 2018, landowner

---

[2] At one point, the parties disputed whether this variance application was instead an appeal of the January 2018 Permit Denial.  In re Banyai Variance, No. 53-5-18 Vtec, at *3-4 (Vt. Env't Div. Jan. 4, 2019) https://www.vermontjudiciary.org/sites/default/files/documents/Banyai%20Va riance%2053-5-18%20Vtec%20Decision.pdf [https://perma.cc/35X2-LDP3].  We do not address this issue as it does not affect our analysis in this case and for clarity refer to it as a variance application throughout this opinion.

[3] The parties dispute whether the June 2018 Permit was appealed.  The Town argues neighbors appealed and that the appeal was held in abeyance pending the Environmental Division's decision on the variance appeal.  In support of this proposition, the Town cites a footnote in the Environmental Division's decision on the Town's and neighbors' cross-motions for summary judgment in the variance appeal.  See In re Banyai Variance, No. 53-5-18, at *3 n.2.  Beyond this passing reference, the record does not conclusively establish whether an appeal was filed.  See O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 466, 194 A.2d 568, 571 (1963) ("Our inquiry is confined to those facts which are established by the record.").  In any event, this fact does not impact the outcome in this case because we assume without deciding that the June 2018 Permit was valid.

After oral argument, the Town filed a citation of supplemental authority pursuant to Vermont Rule of Appellate Procedure 28(h), providing a letter and an email exchange not included in the record to prove the existence of a document rescinding the June 2018 Permit.  Landowner

applied for and obtained a permit to construct a residential garage/apartment (October 2018 Permit).

¶ 6. Meanwhile, the Environmental Division issued its decision on neighbors' variance appeal in January 2019. The court determined that the DRB erred when it concluded landowner's property did not require a variance instead of considering whether to grant a variance and remanded to the DRB to make that determination on the merits. See In re Banyai Variance, No. 53-5-18 Vtec, at *6. The court reasoned the January 2018 Permit Denial was final and binding under 24 V.S.A. § 4472 because it went unappealed, and therefore, landowner required a variance for the noncompliant right-of-way, as initially stated in the January 2018 Permit Denial. Id. at *4-5. On remand, the DRB denied the variance application and landowner did not appeal.

¶ 7. In August 2019, the zoning administrator sent landowner a second notice of violation (NOV2) alleging he erected multiple structures and used his property as a training facility/shooting school in violation of the bylaw requiring a landowner to obtain a permit before beginning construction or changing land use. See Bylaws art. VIII, § 2. NOV2 stated that landowner's only valid permit was the October 2018 Permit for a garage/apartment. To cure the violation, NOV2 instructed landowner to "eliminate the unpermitted uses on the property, remove all unpermitted buildings, and not allow unpermitted uses to resume on the property" within seven days. It also provided he could appeal the notice to the DRB and that failure to appeal would result in NOV2 becoming "the final decision on the matter." Landowner did not appeal NOV2 and did not follow the letter's instructions to cure the violation.

---

filed an objection and motion to strike the citation of supplemental authority arguing the attached documents were not "authorities" under the meaning of Rule 28(h) and were accompanied by impermissible argument. We deny landowner's motion to strike as moot because the Town's supplemental citation does not impact our analysis. See Com. Constr. Endeavors, Inc. v. Ohio Sec. Ins. Co., 2019 VT 88, ¶ 1 n.1, 211 Vt. 286, 225 A.3d 247 (denying motion to strike supplemental authority since material had no bearing on outcome of case). Because we assume that the June 2018 Permit is valid, all arguments relating to whether the June 2018 Permit was void ab initio or rescinded are irrelevant to our analysis.

¶ 8.    At this point, we arrive at the proceeding directly subject to this appeal.  In September 2019, the Town filed an action in the Environmental Division to enforce NOV2.  The Town filed a motion for summary judgment arguing that landowner's property was in violation of the Bylaws, landowner was barred from contesting the alleged violations in NOV2, and the Town was entitled to injunctive and monetary relief to remedy the violations.  The Environmental Division granted the motion in part, concluding that landowner's failure to appeal NOV2 rendered it final and binding under 24 V.S.A. § 4472(d), and prevented landowner from contesting the violations therein, including the lack of a valid permit for a "school."  The court explained that the June 2018 Permit was invalid because the zoning administrator lacked jurisdiction to issue it while the DRB's variance decision was on appeal.  However, the court added that even if the June 2018 Permit was initially valid, the finality of NOV2 rendered the permit ineffective.  The court denied summary judgment as to the Town's various requests for remedies, including injunctive relief, penalties, and enforcement fees.

¶ 9.    In December 2020, the Environmental Division held an evidentiary hearing on the remaining issues.  The Town provided witnesses and exhibits to demonstrate landowner's violations and noncompliance.  Landowner testified on his own behalf but refused to answer questions from the Town on direct or on cross-examination.  The trial court found landowner in contempt for his refusal to answer questions on cross-examination.  Although the record is not entirely clear, as a sanction for refusing to answer questions the court either admitted some of the Town's exhibits into evidence or considered the information in the exhibits to be admitted by landowner.  See infra, Part II.B.

¶ 10.    Following the merits hearing, the trial court granted the Town's motion for a preliminary injunction and enjoined landowner from conducting firearms training activities on his property or seeking a permit to do so until the decision on the merits. In March 2021, the trial court issued its decision on the merits, which incorporated the factual findings and legal

5

conclusions from the partial summary judgment order and preliminary injunction order. The court permanently enjoined landowner from engaging in the unpermitted uses on his property. To ensure compliance with the injunction, the court ordered landowner to hire a surveyor or engineer to complete a site plan of the property to submit to the court and the Town, and then to remove all structures in violation of the Bylaws. As to penalties, the court considered various factors and imposed a $100 daily fine totaling $46,600 on landowner.[4]

¶ 11.    On appeal, landowner first argues the June 2018 Permit is valid and became final when it went unappealed. He therefore contends NOV2 is invalid for a variety of reasons, including: (1) it is an impermissible collateral attack on the June 2018 Permit; (2) landowner's alleged violations are for private recreational land uses not subject to municipal zoning; and (3) holding NOV2 valid would violate Dillon's Rule and the constitutional principle of separation of powers. He also argues the trial court abused its discretion when it admitted four of the Town's exhibits into evidence as a sanction for contempt. Finally, he proposes that even if NOV2 is valid, the trial court abused its discretion by imposing excessive fines for the violations.

## II.  Discussion

¶ 12.    We conclude NOV2 is final and binding and that landowner is therefore precluded from contesting any of the violations therein. Even if the June 2018 Permit was valid, landowner was obligated to raise this argument by appealing NOV2. Having failed to do so, NOV2 became final and cannot now be collaterally challenged in this enforcement action. As to the merits hearing, there was no error in the contempt sanction because three of the four exhibits were not admitted into evidence as a sanction and, assuming the fourth's admission was in error, it was harmless. Finally, we conclude that the trial court did not abuse its discretion by ordering landowner to pay $46,600 in fines. We therefore affirm the Environmental Division's decision.

---

[4]  In addition to the $46,000 in fines, the court assessed $1003.03 in court fees and applied a credit of $400 in permit fees to the amount owed, totaling $47,603.03.

A. June 2018 Permit and NOV2

¶ 13. We first address landowner's argument that NOV2 was ineffective because landowner's activities were approved by the June 2018 Permit. The threshold question is what zoning administrator action is enforceable and effective. The permit's validity and the effectiveness of the notice of violation are both controlled by statute. We assume the June 2018 Permit is valid and address NOV2's validity and effect under the applicable statutory scheme. "We review the Environmental Division's legal conclusions de novo and its finding of facts for clear error." In re N.E. Materials Grp., LLC, 2019 VT 55, ¶ 6, 210 Vt. 525, 217 A.3d 541.[5] We review a trial court's statutory interpretation de novo. In re 204 N. Ave. NOV, 2019 VT 52, ¶ 4, 210 Vt. 572, 218 A.3d 24. The facts essential to the question of statutory interpretation in this case are not disputed; therefore, we proceed to the legal inquiry.

¶ 14. Under 24 V.S.A. § 4465(a), "[a]n interested person may appeal any decision or act taken by the administrative officer in any municipality by filing a notice of appeal with the . . . development review board of that municipality." An appeal pursuant to § 4465 is "the exclusive remedy of an interested person with respect to any decision or act taken [by a zoning administrator] . . . with respect to any one or more of the provisions of any plan or bylaw." 24 V.S.A. § 4472(a). Failure to appeal the decision or act renders it final and precludes all interested persons from "contest[ing], either directly or indirectly, the decision or act." Id. § 4472(d).

¶ 15. "We strictly enforce the exclusivity of remedy provisions contained within § 4472 to require that all zoning contests go through the administrative and appellate review process in a

---

[5] The Environmental Division's findings and legal conclusions regarding both the June 2018 Permit and NOV2 were initially determined at the summary judgment phase and then incorporated into the court's final order on the merits. The standard of review for legal questions is the same regardless. See Jadallah v. Town of Fairfax, 2018 VT 34, ¶ 14, 207 Vt. 413, 186 A.3d 1111 (stating we review summary judgment rulings de novo); Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co., 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82 ("We conduct a plenary, nondeferential review of the questions of law raised by [a motion for summary judgment].").

timely fashion." In re Ashline, 2003 VT 30, ¶ 10, 175 Vt. 203, 824 A.2d 579. The purpose underlying § 4472(d) is "the firm belief that there should, in fairness, come a time when the decisions of an administrative officer become final so that a person may proceed with assurance instead of peril." Graves v. Town of Waitsfield, 130 Vt. 292, 295, 292 A.2d 247, 249 (1972); see also Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 143, 564 A.2d 1361, 1364 (1989) (explaining that even ultra vires actions must be treated as binding under § 4472(d) because "[t]o hold otherwise would severely undermine the orderly governance of development and would upset reasonable reliance on the process"). Section 4472's effect is to bar "any kind of collateral attack on a zoning decision that has not been properly appealed through the mechanisms provided by the municipal planning and development statutes." City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588-89, 762 A.2d 1229, 1230 (2000) (mem.).

¶ 16. We have previously applied § 4472 to an unappealed notice of violation. In Town of Charlotte v. Richmond, a town zoning administrator issued a notice of violation to a landowner whose business violated the town's zoning ordinance. 158 Vt. 354, 609 A.2d 638 (1992). After the landowner failed to comply with or appeal the notice, the town brought an enforcement action. In the enforcement proceedings, the landowner argued the notice of violation was incorrect because the landowner's business was a permitted nonconforming use and was therefore in compliance with the ordinance. This Court held the trial court had no jurisdiction to entertain landowner's permitted-nonconforming-use argument because landowner, having failed to appeal, was bound by the zoning administrator's determinations in the notice of violation. Id. at 356-57, 609 A.2d at 639-40. Relying on Charlotte, we came to the same conclusion in In re Newton Enterprises, when we stated that the landowners who failed to appeal from a notice of violation in that case were prevented from later claiming their property conformed with the zoning ordinance. 167 Vt. 459, 462, 708 A.2d 914, 916 (1998).

¶ 17.    Here, as in Town of Charlotte and Newton Enterprises, it is undisputed that NOV2 went unappealed.  Therefore, NOV2 is final and binding under § 4472.  It follows that landowner is prevented from contesting any of the violations in NOV2.  Consequently, as stated in NOV2, landowner has only one valid permit, the October 2018 Permit for a garage/residential apartment, and his current school improvements and uses of his property are violations of the Bylaws; by failing to appeal NOV2, he is precluded from arguing his uses detailed in the notice of violation are either not subject to the Bylaws or in conformance with the Bylaws, and from relying on the June 2018 Permit.

¶ 18.    Landowner counters that NOV2 is invalid because it incorrectly denies the validity of the June 2018 Permit and attempts to regulate private recreational land uses not subject to municipal zoning.  The extent to which these arguments might be correct is irrelevant because the strict and clear rule of finality in § 4472 explicitly operates to bar collateral attacks regardless of their merit.  See 24 V.S.A. § 4472(a) (stating appeal of zoning official's decision is "exclusive remedy" for "any decision or act taken" (emphasis added)); City of S. Burlington, 171 Vt. at 588-89, 762 A.2d at 1230 (explaining statute prevents all collateral attacks).  Our precedent is clear that § 4472 applies even when the unappealed decision or act is incorrect or made without proper authority.  See City of S. Burlington, 171 Vt. at 588-89, 762 A.2d at 1230 (tracing our substantial precedent on issue); see also, e.g., Phillips Constr. Servs., Inc. v. Town of Ferrisburg, 154 Vt. 483, 485, 580 A.2d 50, 51 (1990) (determining permit, even if void as ultra vires, was final).

¶ 19.    Landowner also argues that interpreting § 4472 in a way that concludes NOV2 is final and binding violates Dillon's Rule and the constitutional principle of separation of powers.  The crux of this argument seems to be that applying § 4472 to NOV2—which landowner maintains was void following the June 2018 Permit—would allow the zoning administrator to act in a way not authorized by the Legislature because the zoning administrator could undermine final decisions

9

with later actions invalidating or challenging those final decisions.[6]  Dillon's Rule states that "a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate[,] or necessary to the exercise thereof." Hinesburg Sand & Gravel Co. v. Town of Hinesburg, 135 Vt. 484, 486, 380 A.2d 64, 66 (1977). It requires us to resolve any doubts concerning a grant of power against the municipality.  Valcour v. Vill. of Morrisville, 104 Vt. 119, 130, 158 A. 83, 86 (1932).

¶ 20.    The invocation of Dillon's Rule is misplaced because § 4472 is not a grant of power to a municipal actor but a procedural mandate passed by the Legislature requiring all interested parties to bring any appeal through the proper administrative mechanisms.  In other words, § 4472 does not authorize a zoning administrator to make a decision; it bars interested parties from collaterally challenging a zoning administrator's decision once the appeal period has passed.

¶ 21.    Landowner's separation-of-powers argument likewise fails.    The Vermont Constitution states: "The Legislative, Executive[,] and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others."  Vt. Const. ch. II, § 5.  Interpreting a statute beyond the Legislature's intent "would constitute judicial legislation" and violate the constitutional principle of separation of powers.  State v. Jacobs, 144 Vt. 70, 75, 472 A.2d 1247, 1250 (1984).  In this case, as in our precedent interpreting § 4472, we are not expanding the power granted to the municipality by the Legislature in the statute, we are enforcing the plain meaning of the statute governing municipal decisions.  Doyle v. City of Burlington Police Dep't, 2019 VT 66, ¶ 5, 211 Vt. 10, 219 A.2d 326 (explaining that primary goal of statutory interpretation is "to give effect to the Legislature's intent" and that inquiry starts with text's "plain

---

[6] Landowner frames his argument as a question of statutory interpretation, and we address it as such.  To the extent landowner challenges the constitutionality of the zoning administrator's decision, the statute itself, or the statute's application to decisions made without lawful authority, these questions are not preserved for appeal and are not addressed.  See In re Mullestein, 148 Vt. 170, 175, 531 A.2d 890, 893 (1987) ("Issues not presented below will not be considered on appeal.").

meaning" (quotations omitted)). In doing so, we are upholding, not usurping, the Legislature's intent, because when a statute is unambiguous and has a plain meaning, we "accept the statute's plain meaning as the intent of the Legislature and our inquiry proceeds no further." Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350. As explained above, the plain meaning of § 4472 is to prevent any collateral challenge.[7] Landowner was obligated to bring any challenge to NOV2 through an appeal and having failed to do so, he is barred from challenging its validity in this enforcement action.

## B. Sanctions

¶ 22. We now turn to the question of whether the court improperly admitted certain exhibits as a sanction at the merits hearing. While presenting its case, the Town moved to admit seven exhibits, four of which are relevant here: Town Exhibit A, a newspaper article containing statements made by landowner; Town Exhibits C and F, Facebook posts made on a page controlled by landowner; and Town Exhibit E, an unofficial transcript of a separate, unrelated hearing on landowner's stalking request filed against neighbors recorded by a witness testifying at the merits hearing.

¶ 23. When asked, landowner stated that he objected to Town Exhibits A and B, but he only explained his grounds for opposing Town Exhibit B. The trial court admitted Town Exhibits A and B. The court later also admitted Town Exhibits C and F over landowner's objection that they lacked authenticity. As to Exhibit E, the Town provided witness testimony to lay a foundation to have it admitted into evidence. Landowner objected to the witness's testimony on grounds of relevance and hearsay. The trial court permitted the witness to testify based on her personal

---

[7] There is an exception to the general finality rule for constitutional challenges to bylaws or municipal plans in § 4472(b). Landowner does not raise this exception here and accordingly we do not apply it.

knowledge of the events described in Town Exhibit E but did not admit Town Exhibit E into evidence at that time.

¶ 24. As part of its case, the Town called landowner as a witness, but he refused to answer questions. Landowner thereafter testified in his own case but again refused to answer questions on cross-examination. The trial court explained to landowner that his continued refusal to answer questions would result in the court considering his statements within these exhibits to be admitted by him as statements against interest. When landowner still did not answer the questions, the court stated that Exhibits A, C, and F were admitted "[a]bsent [landowner] making himself available for cross-examination." The Town moved again to admit a portion of Exhibit E. The trial court informed landowner it found him in contempt and that the sanction for the contempt would be "admitting these exhibits." The trial court "admitted" two pages of Exhibit E, which included landowner's admission that he controlled his property's Facebook page. The trial court "admitted" Town Exhibits A, B, C, and F as a further remedy for the contempt. Landowner did not provide any specific objection to the court's admission of these exhibits as a sanction for his failure to testify.[8]

¶ 25. On appeal, landowner argues the trial court erred in admitting Exhibits A, C, F, and E into evidence, alleging that the court lacked authority to admit otherwise inadmissible evidence as a sanction for landowner's refusal to answer questions on cross-examination. As a subset of this argument, landowner asserts each exhibit is inadmissible and that the witness testimony—the proposed foundation for Exhibit E—is inadmissible. Although landowner argues in general terms

---

[8] At the hearing, landowner stated his reasons for refusing to answer questions were: "biases, nepotism[,] and corruption," a violation of his rights, and that he had a valid permit. He did not object to the admission of the exhibits as a sanction for his refusal to answer questions, however. The question of whether the trial court did or could have deemed the contents of the exhibits to be admitted by landowner as a sanction for contempt under these circumstances is therefore not preserved for appeal. See Hum. Rts. Comm'n v. LaBrie, Inc., 164 Vt. 237, 252, 668 A.2d 659, 670 (1995) ("Where an aggrieved party fails to make a specific objection in the trial court, this Court need not address the issue on appeal.").

that each of the exhibits was inadmissible, his arguments differ from his original grounds for objecting, and on appeal he does not address those original grounds. Because landowner's appeal does not address the grounds presented in his original objections, we will not raise them sua sponte. See State v. Taylor, 145 Vt. 437, 439, 491 A.2d 1034, 1035 (1985) ("The burden for proper presentation of issues raised on appeal is with the appellant . . . . It is not the proper role of this Court to foretell, through the art of divination, those issues which the parties deem appropriate for resolution."). We conclude landowner waived his original grounds for challenging the exhibits and witness testimony and that he failed to preserve his arguments about the initial admissibility of each exhibit for our review.

¶ 26. Even assuming landowner's overarching sanction argument was preserved for appeal, the waiver of these original grounds challenging their admission into evidence also affects landowner's argument that Exhibits A, C, and F could not be made admissible as a sanction. Landowner argues Exhibits A, C, and F were inadmissible, but they had already been admitted into evidence during the Town's case-in-chief before the trial court found landowner in contempt. Without preserving the original grounds to challenge them, the three exhibits' initial admission into evidence is proper absent plain error—which landowner does not argue. The trial court's action to also admit them into evidence as a sanction was therefore redundant and unnecessary. We need not address landowner's argument for these three exhibits because it was not legally significant. See Springfield Coop. Freeze Locker Plant v. Wiggins, 115 Vt. 445, 451, 63 A.2d 182, 186-87 (1949) (finding harmless error where exhibits erroneously admitted were originals of exhibits already in evidence). Therefore, in addressing this evidentiary issue, we look solely at Exhibit E, because it was not previously admitted as evidence.

¶ 27. Assuming without deciding that Exhibit E's admission as a sanction was an error, this error was harmless. This exhibit was an unofficial transcript of a hearing in which landowner admitted that he maintained and controlled the contents of a Facebook page for his property. This

13

information was relevant, but it was redundant to the witness's live testimony, which provided the same information based on her personal observations from attending the hearing. Because the relevant information was already in evidence based on the witness's testimony, its admission in the form of Exhibit E, even if error, was cumulative and harmless. See Ellison v. Colby, 110 Vt. 431, 437, 8 A.2d 637, 640 (1939) (concluding that error in allowing witness to answer question harmless where witness provided same testimony without objection or exception later in hearing); Springfield Coop. Freeze Locker Plant, 115 Vt. at 451, 63 A.2d at 186-87 (same).

## C. Fines

¶ 28. Finally, we address the issue of fines for the violations. To assess the fines due, the trial court used the criteria provided in the Uniform Environmental Law Enforcement Act, 10 V.S.A. § 8010(b), and determined all factors warranted a significant daily fine. Taking into consideration all factors, the court imposed a $100 daily fine, totaling $46,600 over the 466 days of violation. Landowner argues that the fines are excessive.

¶ 29. The Environmental Division has broad discretion in setting a fine under 24 V.S.A. § 4451. We review its penalty assessment for abuse of discretion and will not reverse if there is any "reasonable basis" for the decision. Town of Hinesburg v. Dunkling, 167 Vt. 514, 528, 711 A.2d 1163, 1171 (1998) (quotation omitted). We will not disturb the trial court's findings "if supported by credible evidence, even if there is substantial evidence to the contrary." In re John L. Norris Tr., 143 Vt. 325, 327, 465 A.2d 1385, 1387 (1983).

¶ 30. Section 4451 authorizes a maximum fine of $200 per violation with each day the violation continues counting as a new violation. 24 V.S.A. § 4451(a), (a)(3). When determining a fine, the Environmental Division must "balance any continuing violation against the cost of compliance and . . . consider other relevant factors, including those specified in the Uniform Environmental Enforcement Act." In re Beliveau NOV, 2013 VT 41, ¶ 23, 194 Vt. 1, 72 A.3d 918. The Uniform Environmental Enforcement Act factors are:

(1) the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;

(2) the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;

(3) whether the respondent knew or had reason to know the violation existed;

(4) the respondent's record of compliance;

(5) [Repealed];

(6) the deterrent effect of the penalty;

(7) the State's actual costs of enforcement; and

(8) the length of time the violation has existed.

10 V.S.A. § 8010(b).

¶ 31. We determine that the Environmental Division did not abuse its discretion when it fined landowner $46,600 for the violations in NOV2. The trial court evaluated all seven factors in assessing the fine. The court made the following findings relative to the factors. Landowner's failure to disclose specifics regarding his training facility/shooting range in the form of a permit application prevented the Town from assessing potential risks to neighbors and the environment. Specifically, the unpermitted shooting range could interfere with neighbors' use and enjoyment of their property and bullets and shells could damage the environment. There was no "credible evidence" of any mitigating factors because landowner refused throughout the proceeding to comply with the Bylaws and landowner delayed the Town's ability to enforce the Bylaws by applying for the June 2018 Permit while the variance application appeal was pending. Landowner knew of his violations and should have known the June 2018 Permit was either not valid or would not have covered the extent of his uses of the property. Landowner had a history of noncompliance with the Bylaws, despite warnings from Town officials, and a significant daily fine was required to deter landowner from future violations based on landowner's previous investments in

15

improvements and stated intent to make further improvements on the property. Thus, the court identified certain factors as warranting a significant fine: (1) actual or potential impact on public health, safety, welfare, and the environment, (2) whether landowner knew or had reason to know the violations existed, (3) record of compliance, and (4) proper level of fines as a deterrent.

¶ 32. On the first factor, impact on health, safety, welfare, and the environment, the court explained that the consequence of landowner's failure to submit permit applications fully disclosing his intended improvements on and uses of the property prevented the Town from determining landowner's compliance with the Bylaws and from assessing the potential environmental impact of the improvements and the shooting range.

¶ 33. The other factors supporting the significant fines—whether landowner knew or had reason to know the violations existed, record of compliance, and proper level of fines for deterrence—focus on landowner's failure to comply with the Bylaws over time. The trial court explained that landowner invested approximately $1.6 million to improve his property and intended to continue making improvements. In the context of these development projects, landowner's failure to obtain permits or adjust his plans in response to Town officials' warnings indicated landowner was aware of the violations and had a poor record of compliance. The court determined that there was a need for monetary fines as a deterrent for future violations. Further assessing landowner's potential awareness of the violations, the trial court addressed landowner's argument that the June 2018 Permit was valid and therefore no other permits were required by pointing to the Town's repeated warnings that the June 2018 Permit was invalid. The trial court explained that the limited information provided in the June 2018 Permit should have made landowner aware his extensive improvements were not authorized by the June 2018 Permit even if it was valid. Thus, the trial court found that landowner's compliance was poor and fines would be required as a deterrent for future violations whether or not the June 2018 Permit was previously valid.

16

¶ 34. Similar to its conclusion on these three factors, the court found a lack of any mitigating circumstances based on landowner's failure to comply with the Bylaws from the time NOV2 was issued to the merits hearing. It also based its conclusion on landowner's attempt to get the June 2018 Permit while the variance appeal was pending, which the court characterized as causing delays in the Town's ability to make landowner comply with the Bylaws.

¶ 35. Landowner argues that the trial court abused its discretion in part based on his assertion that no violation occurred and NOV2 is void. As explained above, NOV2 is valid, and landowner is foreclosed from challenging any of the violations therein. See Town of Sandgate v. Colehamer, 156 Vt. 77, 85, 589 A.2d 1205, 1210 (1990) (holding that "[b]y its terms, § 4472(d) clearly applies to defenses raised in enforcement proceedings"). As such, landowner's contention that the trial court's analysis of the appropriate fines is incorrect because landowner was in fact in compliance with the Bylaws has no merit and does not undermine the trial court's reasoning. Furthermore, the trial court did not assess fines for any days prior to the point when NOV2 became final, so its analysis on that factor is supported even assuming the June 2018 Permit was valid and landowner's uses were private recreational uses up to that point.

¶ 36. Landowner also takes issue with some of the language and facts used by the trial court. In particular, landowner challenges the trial court's findings that his record of compliance with the Bylaws was "horrendous" and that an unpermitted firing range was an extremely harmful violation. Considering the deferential standard of review, we will not hypercriticize the trial court's chosen language so long as the facts support the trial court's analysis and there is a reasonable basis for the decision. See Knusten v. Cegalis, 2011 VT 128, ¶ 13, 191 Vt. 546, 35 A.3d 1059 (mem.) ("That a different weight or conclusion could be drawn from the same evidence may be grist for disagreement, but does not show an abuse of discretion."). In this case, the facts supported the trial court's finding that landowner had a history of noncompliance. Landowner started development in 2017 before obtaining a permit, regardless of whether he sought permits or

variances later on. It is also undisputed, as the trial court asserts, that landowner did not attempt to address the violations in NOV2 from the point it was issued through when the merits hearing occurred. Because these findings are supported by the evidence, we will not disturb the trial court's finding that landowner's record of compliance was poor, even if there is some evidence to the contrary as landowner asserts.

¶ 37. On the remaining factors, the trial court assessed the costs of enforcement as $17,619.03 based on the Town's undisputed evidence regarding the duration of violation and the number of days between when landowner's opportunity to appeal or address the violations in NOV2 expired and the merits hearing. On these two factors, landowner argues the trial court erred because there was no violation until the court made its decision on the merits. We reject this argument. As explained above, the violations contained in NOV2 became final at the moment the time for appeal expired, making that the appropriate point to begin measurement. See 24 V.S.A. § 4451(a) (explaining penalties cannot be sought until after seven-day notice and opportunity to cure ends).

¶ 38. Looking at the court's analysis as a whole, it considered all the factors and provided facts in support of its conclusion on each of them. Based on this analysis, it assessed a $100 daily fine, which is half of the $200 maximum provided in the statute and not unreasonable considering the trial court's determination that all the factors supported the imposition of a significant fine. See City of St. Albans v. Hayford, 2008 VT 36, ¶ 18, 183 Vt. 596, 949 A.2d 1058 (considering fact that penalty imposed was "well below" statutory maximum and there was ample time for landowner to cure in concluding trial court did not abuse discretion).

¶ 39. Lastly, landowner argues the amount of fines was excessive in combination with the court's orders requiring him to remove the violative structures and hire a surveyor to ensure landowner's compliance with the injunction order, the costs of which would fall on landowner. This argument is unfounded. It was within the court's discretion to levy a civil fine without

18

reducing the amount by landowner's cost of bringing the property into compliance. See <u>Dunkling</u>, 167 Vt. at 529, 711 A.2d at 1172 (explaining that trial court may offset penalty by landowner's cost of bringing property into compliance but is not required to do so). For these reasons, we conclude the trial court did not abuse its discretion when it fined landowner $46,600 for the violations.

### III. Conclusion

¶ 40. To summarize, NOV2 is final and binding under 24 V.S.A. § 4472 and landowner is precluded from challenging any of the violations contained in it. Therefore, landowner cannot rely on the June 2018 Permit, whatever its initial validity, or on his general assertion that the improvements on and uses of his property are not subject to municipal zoning. The trial court also did not admit three of the exhibits challenged as a sanction and admission of the fourth, if in error, was harmless. Finally, the trial court did not abuse its discretion in assessing the fines due as a result of the violations.

<u>Affirmed</u>.

FOR THE COURT:

Associate Justice